Staunton.

## NORTH RIVER INSURANCE COMPANY OF THE CITY OF NEW YORK v. JACK X. LEWIS.

September 20, 1923.

1. INSURANCE—*Automobile Insurance—Representations—Date of Purchase, Cost, and Place where Automobile is Kept—Case at Bar.*—In a policy of insurance on an automobile, the date of the purchase of the automobile as well as the price paid for it are material representations which if false, will avoid the policy unless the insurance company is estopped by the conduct of its agent. So, too, where the rates in the west are lower than the rates in the east, a representation that an automobile was usually kept in Keokuk, Iowa, when in fact it was usually kept in Roanoke, Virginia, is material.

2. INSURANCE—*Representations—Estoppel.*—If a general agent who is vested with authority to issue policies of insurance knows the facts, and notwithstanding such knowledge misstates them in the policy, then the company is estopped from relying on such misstatements to avoid liability thereunder.

3. INSURANCE—*Representations—Estopped by Conduct of Agent.*—In the absence of deceit and fraud of the assured, where there is no application, or if the answers are written by the agent on his own knowledge or authority without questioning the applicant, the company is generally held estopped from relying upon a forfeiture, either because of the falsity of such answers as are written by its own agent, or because of the failure to answer questions material to the risk which had never been asked..

4. INSURANCE—*Communication of Material Facts by Insured.*—An innocent failure to communicate facts about which the insured was not asked will not avoid the policy.

5. INSURANCE—*Representations—Distinction Between Subsequent Breach of Conditions and Innocent Misstatement.*—There is a distinction between subsequent breaches of prohibitive conditions which avoid the policy and false statements of which the assured has no knowledge, made in the application or policy, which are relied on to defeat a recovery upon the claim that the policy, was void from the beginning. A waiver which is complete and effectual at the issuance of the policy, acted on by both parties, is executed. Its finality does not depend upon future contingencies. But where the assured is charged with

conduct subsequent to the issuance of the policy in contravention of
its provisions, he cannot escape the consequences merely by pleading
ignorance of such provisions.

6.  I N S U R A N C E—*Representations—Estoppel—Agent Declaring that He
    Wanted no Further Information.*—In an action upon an automobile
    insurance policy it appeared that before the policy was issued, when
    asked by the plaintiff what information he desired, the agent of the
    company stated that he knew all about the automobile and had all
    the necessary information to write the policy. He was a general
    agent of the company, vested with full authority to sign and deliver
    such policies. In writing the policy the agent misstated the cost of
    the automobile, the place where it was usually kept, and the date
    when it was purchased by plaintiff. Plaintiff, in good faith, relied
    upon the assurance of the agent that he knew all the facts necessary,
    and never read the policy until after the destruction of the automo-
    bile.

    *Held:* That the insurance company was estopped by the conduct of its
    agent from claiming that the misstatements avoided the policy.

Error to a judgment of the Court of Law and Chan-
cery of the city of Richmond, in a proceeding by motion
for a judgment for money. Judgment for plaintiff.
Defendant assigns error.

*Affirmed,*

The opinion states the case.

*Hall, Wingfield & Apperson,* for the plaintiff in error.

*Horace M. Fox,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff, Lewis, recovered $3,200.00 for the loss
of his automobile by fire, upon a policy of insurance
issued by the defendant company through its agent at
Keokuk, Iowa.

· In view of the verdict in favor of the plaintiff, these
facts must be regarded as established: The plaintiff
was known by the agent to be visiting friends at

Keokuk, and that his stay there would be temporary. Before the policy was issued, when asked by the plaintiff what information he desired, the agent stated that he knew all about the automobile and had all the information necessary for the purpose of writing the policy. He was a general agent of the company, vested with full authority to sign and deliver such policies. The policy was delivered to the plaintiff, the premium paid, and he, in good faith, relied upon the assurance of the agent that he knew all the facts necessary. He then put the policy in his trunk without reading it and never saw it again until about seven weeks later after the destruction of the automobile, May 15, 1922.

We agree with the statement of the attorneys for the company that "there is in reality but one question presented for decision in the case." That question is whether or not the company is estopped by the action of its general agent from taking advantage of certain erroneous statements written by such agent in the policy, without the knowledge of the assured.

These statements are: That the automobile was purchased new by the assured in August, 1920, that its actual cost to the assured, including equipment, was $6,100.00, and that it was usually kept in a private garage located at No. 326 south Eighth street, Keokuk, Iowa.

The facts are, that while the original cost new in August, 1920, was $6,100.00, it was bought by the assured in October, 1921, for $3,750.00, and was only to be kept in the garage at Keokuk until the assured concluded his visit there, was then brought to Roanoke, Virginia, where it was kept by the assured and used by him for pleasure, and in connection with his business as a theatrical promoter and manager.

[1] It appears that whether the machine was pur-

chased new or second hand, the date of such purchase as well as the price paid are material representations which affect the amount of insurance procurable, as well as the rate to be paid therefor, by the assured. It is shown that under the rules of the company such a second hand machine would have only been insured for $2,625.00, instead of $3,200.00, for which amount the policy was written, and that the rate would have been ninety cents instead of sixty-five cents per hundred; and that the rates in the West, at Keokuk, are lower than in the East, at Roanoke. So that unless the company is estopped by the conduct of its agent, these falsehoods avoid the policy. Of this there can be no doubt, for so the provisions of the policy must be construed.

The controlling question in the case is clearly and fairly presented by an instruction which the trial court gave, over the objection of the company, which reads:

"The court instructs the jury that if you believe from the evidence that at the time the plaintiff applied for insurance with the defendant company that the said defendant company was represented by an agent with power to accept risks and write policies without obtaining any application therefor and without referring such application to the company's head office, and if you further believe from the evidence that when said plaintiff so applied no application or statement of facts in regard to said automobile was asked or required of him, and that he made no such statements or representations, but that on the contrary, when he inquired of the agent what information the agent desired, the agent assured him that he, the agent, had all the information necessary to write up a policy. And if you further believe from the evidence that the said insured plaintiff relied upon such statement and representation

of said agent and relying thereon accepted a policy prepared by said agent and paid the premium therefor, and that the statements or representations in said policy were made by the agent of his own knowledge and without the knowledge of the insured that they had been so made, then and in such event the court instructs the jury that the defendant cannot rely upon these statements, being untrue, even if they are believed by the jury to be untrue, and that the falsity of such statements, although otherwise material, are not binding upon the plaintiff and do not preclude a recovery by him."

[2] It appears to be conceded (as indeed it must be) that if a general agent who is vested with authority to issue policies of insurance knows the facts, and notwithstanding such knowledge misstates them in the policy, then the company is estopped from relying on such misstatements to avoid liability thereunder. *Lynchburg F. Ins. Co.* v. *West,* 76 Va. 580, 44 Am. Rep. 177.

In *Aetna, etc., Ins. Co.* v. *Olmstead,* 21 Mich. 253, 4 Am. Rep. 483, where there was an ambiguous or false statement as to incumbrances, we find the principle expressed in these words by that great master, Cooley, J.: "* * when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and after being furnished with all the facts, drafts a paper which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity, on the ground of his agent's unskillfulness, carelessness,

or fraud. If this can be done it is easy to see that the community is at the mercy of these insurance agents, who will have little difficulty, in a large proportion of the cases, in giving a worthless policy for the money they receive."

Here it is not claimed that the agent knew, but that he assumed to know, and thus misled the plaintiff by telling him that he already knew all that was necessary, and desired no further information. It appears from this agent's testimony that he actually knew the price of such cars from publications of the manufacturer, that he knew from inspection that it was manufactured in 1920, that from conversations with the manufacturer's agent in Keokuk, in the garage where one of the doors of the machine was being repaired, he knew that its original cost in 1920, with its improvements, was $6,100.00. So that while he testifies that he received the false information from the assured, it also appears that he had other sources from which every affirmative false or misleading statement could have been obtained. The car was bought new in 1920 for $6,100.00, but not by the plaintiff. That it was bought by him for $3,750.00, in 1921, was the sole fact then unknown to the agent, and this the plaintiff could have supplied.

[3] There are many pertinent cases and they cannot be reconciled, but there seems to be little doubt that by the weight of authority, in the absence of deceit and fraud of the assured, where there is no application (and there was none here), or if the answers are written by the agent on his own knowledge or authority without questioning the applicant (as is the case here), the company is generally held estopped from relying upon a forfeiture, either because of the falsity of such answers as are written by its own agent, or because of the

failure to answer questions material to the risk which have never been asked. 16 L. R. A. (N. S.) 1243, note.

[4] In applying this rule, this is said in *Washington Mills, etc., Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 505: "The plaintiff made no misrepresentations and no concealment of his title. * * The defendant saw fit to issue this policy without any specific inquiries of the plaintiff as to the title to the land, and without any representations by the plaintiff upon this point. It was its own carelessness, and it cannot avoid the policy without proving intentional misrepresentation or concealment on the part of the plaintiff. An innocent failure to communicate facts about which the plaintiff was not asked will not have this effect. *Commonwealth* v. *Hide & Leather Ins. Co.*, 112 Mass. 136; *Fowle* v. *Springfield Ins. Co.*, 122 Mass. 191; *Walsh* v. *Philadelphia Fire Association*, 127 Mass. 383."

In *Van Houten* v. *Metropolitan Ins. Co.*, 110 Mich. 682, 68 N. W. 982, it is held that false answers written in an application for life insurance by the company's agent, in reliance upon his own knowledge, does not avoid the policy, even though the application was signed by the assured after answering other questions, he being ignorant of the former false answers contained therein. These cases also illustrate and sustain this view: *O'Neill* v. *Ottawa, etc., Ins. Co.*, 30 U. C. C. P. 151; *German Ins., etc., Inst.* v. *Kline*, 44 Neb. 395, 62 N. W. 857. Several Virginia cases recognize and apply it. Among them are: *Morotock Ins. Co.* v. *Rodefer*, 92 Va. 751, 24 S. E. 393, 53 Am. St. Rep. 846, and *Union Assurance Soc.* v. *Nalls*, 101 Va. 613, 44 S. E. 896, 99 Am. St. Rep. 923.

[5] Some of the expressions in the two cases last cited have been discredited by two later cases, one of which is *Sulphur Mines Co.* v. *Phenix Ins. Co.*, 94 Va. 355, 26

S. E. 856. There the policy was avoided because there was a mortgage on the property at the time the policy was issued, of which the company had no notice. The other is *Westchester Ins. Co.* v. *Ocean View Co.*, 106 Va. 635, 56 S. E. 584. There the plaintiff was not allowed to recover because of the subsequent breach of a condition avoiding the policy if any fireworks were "kept, used or allowed on the premises." The property was burned because of the use of fireworks there at a July 4th exhibition. There is a distinction which should be noted, between subsequent breaches of prohibitive conditions which will avoid the policy, and false statements, of which the assured has no knowledge, made in the application or policy which are relied on to defeat a recovery upon the claim that the policy was void from the beginning. The contention here is that this policy was never valid. If we sustain this contention of the company which is so forcefully supported, we will permit it to escape liability because of the careless action of its own agent in confidently assuming to know material facts affecting the risk of which he was ignorant, and in declining to ascertain such material facts which the plaintiff was apparently ready to communicate. To adopt this view would be to allow the company to take advantage of its own wrong in the absence of a single fact which justifies the imputation of concealment or bad faith on the part of the plaintiff. Such a result cannot be either legally or logically correct.

We do not discuss those cases in which the assured is held bound by the express inhibitions in his policy, whether he has read it or not. They are generally inapplicable here. Several of them refer to waivers by the company and to forfeitures by the assured which arise out of acts or defaults of the assured occurring subsequent to the issuance of the policy. These do not relate to waivers made by the company before or at the

delivery of the policy, which are not dependent in any wise upon future events or conduct. A waiver which is complete and effectual at the issuance of the policy, acted on by both of the parties, is executed. Its finality does not depend upon future contingencies. This distinction between such executed waivers and those forfeitures and waivers which may subsequently occur after the policy has once become effective is fully recognized, as is clearly indicated by the citations made in *Va. F. & M. Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 439, 46 S. E. 466, 102 Am. St. Rep. 846. Where the assured is charged with conduct subsequent to the issuance of the policy in contravention of its provisions, he cannot escape the consequences merely by pleading ignorance of such provisions. He is charged with notice thereof even if he has not read his policy.

[6] This case must also be distinguished from those in which the agent has neither said nor done anything to mislead the assured. Here we have the agent expressly giving the assurance that he already knew every fact necessary to write valid insurance and declining to make any further inquiry. We find him delivering a policy purporting to indemnify the assured, and receiving the premium which was paid in good faith for such indemnity. If the contention of the company is sustained, this policy affirmatively purporting to guarantee indemnity, and so, in good faith received and paid for, was void at its inception and was a mere pretence, proclaimed a contract, but which nevertheless destroyed itself before it became effective. So to construe it would be to hold that its paltering terms merely "keep the word of promise to our ear, and break it to our hope."

Our conclusion therefore is, that there is no error in either the instruction or the judgment.

*Affirmed.*