# Wytheville.

## ROYAL INSURANCE COMPANY, LIMITED, v. SUSIE POOLE AND J. W. POOLE.

### June 16, 1927.

1. INSURANCE—*False Answers in Application Inserted by Agent—Limitation on Powers of Agent Known to Insured—Case at Bar.*—In the instant case, an action upon a fire insurance policy, the policy contained a provision that the insurance company should not be bound "by any act done or statement made by or to any agent, or other person, which is not contained in this, my application." Signatures of the insured were duly appended to the application. The policy made the application part of the agreement between the parties. The policy provided that it should be void if the insured had any other contract of insurance on the property or if there was a mortgage or lien on the property. In the application insured denied existence of other insurance or liens. It was admitted that the insured property was mortgaged and that there was other insurance on it. Insured sought to avoid the effect of these false answers by testifying that the application was signed in blank and that the answers were subsequently filled in by the agent of the company.

   *Held:* That under these circumstances, insured was not entitled to recover.

2. INSURANCE—*Limitation on Powers of Agent Known to Insured—Breach of Warranties.*—An insurance company has a right to limit the authority of its agent, and when an insured has notice of the limitation of authority of such an agent, then the knowledge of its agent that material warranties have been breached or are untrue, is not to be imputed to the company, and the company will not be deemed to have waived the condition or be estopped to declare the policy void.

3. INSURANCE—*Limitation on Powers of Agent Known to Insured—General Agent—Waiver of Conditions.*—Not only may an insurer limit the authority of an agent, but when such limitations are brought to the knowledge of the insured, then he is bound thereby, and, though the agent exercises functions which might have otherwise entitled him to be regarded as a general agent, he cannot, contrary to the terms of the contract, waive conditions or forfeitures unless it is shown that such waiver was known to the insurer.

4. INSURANCE—*Limitation on Powers of Insurance Agent—When Company Relieved of Responsibility—Knowledge of Insured of Limitations—What Constitutes Notice.*—The signing of an application for insurance which contains a limitation on the powers of the insurance agent is regarded as notice to the insured of the limitation whether he reads the application or not. In order to relieve the insurance company of responsibility where its agent knows the falsity of an applicant's answers, the authority of the agent must be limited, the insured must have notice of this limitation on powers and the insurer must have no notice of the falsity of the answers in the application of insured.

5. INSURANCE—*Authority of General Agent—Waiver of Conditions—Limitation upon Authority.*—An insurance company is affected with notice of all of which its general agent has knowledge of with respect to a policy, and a waiver of conditions or provisions of the policy follows, if the agent has knowledge of the circumstances constituting such waiver; but an agent whose powers are limited cannot waive conditions in the policy where the insured has knowledge of the limitation of the agent's authority.

6. INSURANCE—*Agents—Limitation upon Authority—Notice of Limitation in Application.*—The right of an insurance company to protect itself through its application in giving notice to the insured of the limited powers of its agent seems to be unquestioned in Virginia.

7. INSURANCE—*Application—Duty of Insured to Read—Notice of Contents of the Application.*—It is the duty of insured to read the application which he has signed and he is chargeable with notice of what the application contained.

8. INSURANCE—*Application for Insurance—Signing without Reading.*—Where applicants for insurance signed application without reading it or having it read to them, they are bound to know what they sign.

Error to a judgment of the Circuit Court of Nottoway county in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Sands, Williams & Lightfoot* and *Henry E. Lee,* for the plaintiff in error.

*H. H. Watson* and *Wm. M. Tuck,* for the defendants in error.

CHICHESTER, J., delivered the opinion of the court.

This is a proceeding by notice of motion instituted by Susie Poole and J. W. Poole, hereafter called "insured," to recover $5,500.00 with interest from October 16, 1924, under a policy of insurance issued to them by the Royal Insurance Company, Limited, hereafter called "company." Of the $5,500.00 insurance $4,000.00 was on a frame dwelling house situate on a farm of 131 acres in Nottoway county, and $1,500.00 was on household furniture located in the building. The policy was of a special form issued by the form department of the company which provided for insurance for five years, with premiums payable annually.

This form of policy was not held in stock subject to delivery by the local agent as fire policies ordinarily are, but was only issued from the home office of the company after the local agent had inspected the property and sent in an application, signed by the applicant for insurance, containing numerous and various questions to be answered bearing upon the risk involved, in relation to the title to the property, condition as to encumbrances, other insurance, past history of the insured in reference to previous fires, etc. It was after such an application, signed by insured, had been received and passed upon by the company that the policy, at the election of the company, was issued.

In this application the following questions and answers among others appear:

"Q. Is there any other insurance on the property? If so, give name of company and attach copy of written form of policy.

"A. No. $5,000.00 Pol. on dwelling expires April 15, 1924.

"Q. Is any of your real estate under mortgage, lien

or encumbrance?  If so, state how, what amount and when due.

"To which the applicant answered 'None.'

"Q. Have you any fear that your property is in danger from incendiary, or have you enemies that have made threats?

"A.  No."

All of which answers were admittedly false.

The application concludes as follows:

"The foregoing is my own agreement and statement, and is a correct description of the property on which indemnity is asked, and I hereby agree that insurance shall be predicated on such statement, agreement and description, if this application is approved, and that the foregoing shall be deemed and taken as an agreement on my part, running during the entire life of said policy.  This company shall not be bound by any act done or statement made by or to any agent, or other person, which is not contained in this, my application. This application must be filled and signed with ink, not pencil.

"N. B.—This application in all cases to be signed by the applicant or some person duly authorized by him or her.  In no case by the agent.

*"Applicant."*

The signatures of the assured were duly appended. The policy contained this provision, "Special reference is hereby made to assured's application, which is made an agreement and part hereof," and it also contained the provisions that if the property was mortgaged the

entire policy should be void, and that unless otherwise
provided by the agreement endorsed on the policy or
added to it, it should be void if the insured had any
other contract of insurance whether valid or not on
property covered in whole or in part by the policy.

The defendant relied upon the general issue, and set
up as its grounds of defense that the insurance in
question was procured by fraud on the part of the
plaintiffs; that the application for insurance contained
sundry false and misleading representations, such as
the assertion that there was no mortgage or lien,
whereas, in fact, there was a deed of trust upon the
property for $3,800.00; that the plaintiff stated that
there was no other insurance upon the property in
question, whereas there were two additional policies,
one with the Farmer's Mutual for $2,500.00, and
another with the Home Insurance Company of New
York for $3,000.00; that the plaintiff had stated that
the risk had not been rejected, whereas the risk had
within a few months previous been refused.

The insured admitted on the trial that the insured
property was mortgaged, that there was other insurance
not agreed to by the company and not endorsed on the
policy, and that the answers contained in the question-
naire in respect to these matters were not true, but
they sought to avoid the effect of the answers given by
testifying that the application was signed in blank and
and that the answers were subsequently filled in by the
agent of the company, R. M. Williams, and that he was
responsible for the answers as given. There was a
direct conflict of evidence on this point, but under the
instructions given by the court one of which submitted
this question of alleged fraud to the jury, a verdict of
$3,225.00 in favor of the plaintiffs (insured) was re-
turned and judgment was entered on this verdict.

There were sundry objections and exceptions to instructions given for the insured and exceptions to the action of the court in refusing instructions tendered by the company. The usual motion was made to set aside the verdict of the jury and enter judgment for the defendant and exception taken to the action of the court in refusing the motion.

There are three assignments of error which we do not consider it necessary to discuss in order, because exceptions to instructions and the motion to set aside the verdict raise the question as to whether, as a matter of law, under the facts of this case, assuming that the agent of the company did fill in the answers to the questions in the application after the applicants for insurance had signed it, and was responsible for their falsity, the policy was valid and binding upon the company.

The trial court took the position that under such circumstances insured were entitled to recover and so instructed the jury and the jury found for the plaintiffs.

[1-3] We think, under the circumstances, insured were not entitled to recover. An insurance company has a right to limit the authority of its agent, and when an insured has notice of the limitation of authority of such an agent, then the knowledge of its agent that material warranties have been breached or are untrue, is not to be imputed to the company, and the company will not be deemed to have waived the condition or be estopped to declare the policy void; or, to state it differently, we think it may fairly be said that the weight of the most recent adjudications is to the effect that not only may an insurer limit the authority of an agent, but that when such limitations are brought to the actual knowledge of the insured, then that he is bound thereby, and though the agent exercises func-

tions which might have otherwise entitled him to be regarded as a general agent, he cannot, contrary to the terms of the contract, waive conditions or forfeitures unless it is shown that such waiver was known to the insurer.

The leading case holding this view is that of *New York Life Insurance Co.* v. *Fletcher*, 117 U. S. page 519, 6 S. Ct. 837, 29 L. Ed. 934. This case presented to the United States Supreme Court the identical questions presented to this court in the instant case. It was conceded by counsel for insured that this case is not distinguishable from the *Fletcher Case*, but it was contended that the trend of decision in Virginia is against the rule laid down in that case, and *North River Insurance Co.* v. *Lewis*, 137 Va. 322, 119 S. E. 43, and *Va. Fire and Marine Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 439, 46 S. E. 463, 102 Am. St. Rep. 846, are cited as holding a contrary view. We quite agree with counsel that the *Fletcher Case* is not distinguishable from the case we are considering, but we do not agree that any Virginia decision has held a contrary view, as will be shown later.

In the *Fletcher Case* the application was for life insurance, was signed by the assured, and contained false answers as to the state of the applicant's health. The company defended on this ground. This defense was met by the plaintiff with the assertion that while his intestate signed the application for insurance, he did not read it, that he gave the company's agent the correct answers to the questions set out therein but the agent inserted false answers without his knowledge. The application for insurance set out the limitation upon the agent's authority, just as the application in the instant case does, it was made a part of the policy, as here, and the policy contained a clause which made

it void if the condition of the applicant's health was not as stated in the application. Under these circumstances the contention was that the plaintiff was not estopped from recovering.

Mr. Justice Field, speaking for the court, said: "It is conceded that the statements and representations contained in the answers, as written, of the assured to the questions propounded to him in his application, respecting his past and present health, were material to the risk to be assumed by the company, and that the insurance was made upon the faith of them, and upon his agreement accompanying them that, if they were false in any respect, the policy to be issued upon them should be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name is signed; that he truthfully answered those questions; that false answers written by an agent of the company were inserted in place of those actually given, and were forwarded with the application to the home office; and it is contended that, such proof being made, the plaintiff is not estopped from recovering."

And then the court proceeds to wipe aside this contention as follows: "But on the assumption that the fact as to the answers was as stated, and that no further obligation rested upon the assured in connection with the policy, it is not easy to perceive how the company can be precluded from setting up their falsity, or how any rights upon the policy ever accrued to him. It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers: Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false

representations in order to secure a valuable contract, which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be cancelled and the premiums returned. As the present action is not for such a cancellation, the only recovery which the plaintiff could properly have upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premiums paid, and to that only would he be entitled by virtue of the statute of Missouri.

"But the case as presented by the record is by no means as favorable to him as we have assumed." (And all that follows is equally true in the instant case.) "It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail, and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though

they were true. If he had read even the printed lines of his application he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application and was cognizant of the limitations therein expressed."

The case of *Ryan* v. *World Mutual Life Ins. Co.*, 41 Conn. R. 168, 19 Am. Rep. 490, is another case in which the facts are very similar to the facts here, and it is quoted from at length in the *Fletcher Case.* In that case, after observing that the courts of the State had construed the powers of an insurance agent liberally, and held that, in writing the application and explaining interrogatories and the meaning of the terms used, he was to be regarded as the agent of the company, and, referring to the case of *Insurance Company* v. *Wilkinson*, in 13th Wallace 222, 20 L. Ed. 617 (distinguished in the *Fletcher Case*), the court said: "But it cannot be supposed that these defendants intended to clothe this agent with authority to perpetrate a fraud upon themselves. That he deliberately intended to defraud them is manifest. He well knew that if correct answers were given no policy would issue. Prompted by some motive he sought to obtain a policy by means of false answers. His duty required him not only to write the answers truly as given by the applicant, but also to communicate to his principal any other fact material to the risk which might come to his knowledge from any other source. His conduct in this case was a gross violation of duty, in fraud of his

principal, and in the interest of the other party. To hold the principal responsible for his acts, and assist in the consummation of the fraud, would be monstrous injustice. When an agent is apparently acting for his principal, but is really acting for himself or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself, or the person for whom he is really acting, and the principal * * *. The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or the insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of *Lewis* v. *The Phoenix Mutual Life Ins. Co.,* 39 Conn. 100. If she was an instrument she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she signed it she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has the right to presume that he will do it. He has it in his power to prevent this species of fraud and the insurer has not."

Other pertinent cases are: *Dimick* v. *Metropolitan Life Ins. Co.* (1903), 69 N. J. L. 384, 55 A. 291, 62 L. R. A. 774; *Deming Investment Co.* v. *Shawnee F. Ins. Co.* (1905), 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607; *Chase* v. *Hamilton Ins. Co.,* 20 N. Y. 52; *Maier* v.

*Fidelity Mut. Life Ins. Ass'n* (C. C. A.), 78 Fed. 566; *Rinker* v. *Arena Life Ins. Co.*, 214 Pa. St. 618, 64 A. 82, 112 Am. S. R. 773; and note to *Suravitz* v. *Prudential Ins. Co. of America*, L. R. A. 1915A, page 273.

[4] It will thus be seen that the distinguishing features of the class of cases we are dealing with are that the authority of the agent is limited, that the insured has notice of this limitation of power (and signing an application for insurance containing the limitation is regarded as such notice whether applicant reads the notice or not), and the insurer has no notice of the falsity of the answers.

[5–7] The cases relied on by the insured here, *North River Insurance Co.* v. *Lewis*, 137 Va. 322, 119 S. E. 43, and *Va. Fire and Marine Ins. Co.* v. *Richmond Mica Co.*, *supra*, do not come within this class, and we do not intend to depart from the principles established by them. They deal with cases where the agent has full power to act and to deliver the policy, or with cases where the insured has no actual notice of the limitation of the agent's power, and not with cases where the agent's power is limited by the company, and the limitation of power is brought home to the insured by an application for insurance containing the limitation, and which the insured must personally sign. In the class of cases relied on, the company is affected with notice of all the general agent has knowledge of with respect to the policy, and a waiver of conditions or provisions follows. They do not, nor do any other Virginia cases to which we have been referred, hold that an agent, whose powers are limited and the assured has notice of those limitations, may waive conditions in an insurance policy. We have found no expression in any Virginia decision which seems to militate in any way against the right of an insurance company to

protect itself through its application in giving notice to
the insured of the limited powers of its agent.  On the
contrary, whenever the *Fletcher Case (supra)* has been
referred to by this court it has been with approval and
to distinguish the case under consideration from the
*Fletcher Case.*  In *Mutual Life Insurance Co.* v. *Ward,*
95 Va. 231, 28 S. E. 209, Judge Keith said, in referring
to the case of *Insurance Company* v. *Wilkinson,* 13
Wall. 222, 20 L. Ed. 617: "It has been supposed in
some quarters that the case of the *New York Life Ins.
Co.* v. *Fletcher,* 117 U. S. 519 [6 S. Ct. 837, 29 L. Ed.
934], impaired the authority of the case just cited, but
this impression proceeds upon a misapprehension of the
latter case.  It cites with approval the doctrine
enunciated in *Wilkinson's Case,* but points out that
knowledge of the limitation upon the authority of the
agent was brought home to the insured because those
limitations were stated in the application signed by
him."  And then follows the quotation from the *Fletcher
Case,* which appears above.  In *Georgia Home In-
surance Co.* v. *Goode,* 95 Va. 751, 30 S. E. 366.  Judge
Riely said:  "The case at bar is easily distinguishable
from *Fletcher's Case.*  There the assured had only to
read the printed lines of the application signed by him
to see and learn that 'it stipulated that the rights of
the company could in no respect be affected by his
verbal statements or by those of its agents, unless the
same were reduced to writing and forwarded with his
application to the home office.'  It was his duty to
read the application which he signed, and he was
chargeable with notice of what it contained."

In the *Fletcher Case, supra,* as indicative of the
complete accord between the views expressed in that
case and the Virginia decisions the *Wilkinson Case,*
(referred to by Judge Keith in *Mutual Life Ins. Co.* v.

*Ward, supra*) is distinguished from the *Fletcher Case* thus: "The present case is very different from *Insurance Co.* v. *Wilkinson,* 13 Wall. 222, 20 L. Ed. 617, and from *Insurance Co.* v. *Mahone,* 21 Wall. 152 [22 L. Ed. 593]. In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. Reference was made to the interested and officious zeal of insurance agents to procure contracts, and to the fact that parties who were induced to take out policies rarely knew anything concerning the company or its officers, but relied upon the agent who had persuaded them to effect insurance, "as the full and complete representative of the company in all that is said or done in making the contract," and the court held that the powers of the agent are *prima facie* coextensive with the business entrusted to his care, and would not be narrowed by limitations not communicated to the person with whom he dealt. Where such agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is, therefore, bound by its statements."

[8] As a further evidence of the harmony of views expressed in the Virginia decisions and the principles enunciated in the *Fletcher Case,* Judge Staples in *Southern Mutual Insurance Co.* v. *Yates,* 28 Grat. (69

Va.) 585, quotes from *Ryan* v. *World Life Insurance Co. supra,* language, the effect of which is to hold that, where applicants for insurance sign an application without reading it or having it read to them, they were bound to know what they had signed. The quotation taken from this case with approval of this court is significant because of its great similarity of facts to the case under consideration, and because the Connecticut case is also lengthily quoted from in the *Fletcher Case.*

The instant case is controlled by these decisions and we are clear that no verdict in favor of the insured could properly have been predicated upon the facts disclosed by the record in this case, that the trial court erred in not setting aside the verdict found by the jury and in not rendering judgment for the defendant.

Its judgment must, therefore, be reversed, and this court will render the judgment here which, in our opinion, the trial court should have rendered.

*Reversed.*