# 𝔖taunton

LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY,
LTD. V. ANNE BOLLING, TRADING AS BOLLING CASH STORE.

September 5, 1940.

Record No. 2291.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*George C. Peery* and *Alexander H. Sands,* for the plaintiff in error.

*Roland E. Chase* and *S. H. & Geo. C. Sutherland,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action against a fire insurance company in which the plaintiff seeks indemnity for loss covered by its policy. She has a verdict and judgment, to which attach time-worn presumptions.

It is quite like that of *Franklin Fire Ins. Co.* v. *Bolling,* 173 Va. 228, 3 S. E. (2d) 182. There a judgment was also recovered, which we sustained. In the main, in each instance, the facts are the same and need not be restated. Each policy was written by the same agent. There were seven in all, among which insurance was distributed.

Henry Bolling, father-in-law of complainant, said:

"Q. Mr. Bolling, were you present when the pleadings were made up when Governor Peery came into court to file pleas in these various suits by your daughter-in-law?

"A. Yes, sir, I was here at the other trial.

"Q. Was there anything said about all the cases being tried together, was there anything said between Governor Peery and counsel for your daughter?

"A. As I remember at this time, it was to be a test case and whatever way that went it was to settle all.

"Q. Did you hear a conversation from which you got that understanding?

"A. Yes, sir, I remember the question was asked whether it would be a test case or whether they would all be tried separately, whatever way the case went, that would settle all was my understanding. If Anne had lost we would have stood by that, that was my understanding of the way it was to be."

Counsel for the defendant denies that there was any such agreement, and so this case comes on to be heard upon its merits.

The policy itself is a standard one and contains the usual provisions as to unconditional ownership. The main contention here is that Anne Bolling had no insurable interest in the building burned.

■ If, without more, one insures the property of another, the contract of insurance is void and carries with it temptations to crime into which we should not be led. It is against public policy. One cannot be indemnified for a loss which he did not sustain. This was not the common law rule. *Craufurd* v. *Hunter*, 8 T. R. 13, afterwards changed by statute. 19 Geo. 2, C. 37.

■ Everywhere there is a tendency to broaden the definition of an "insurable interest;" neither legal nor equitable title is necessary.

In *Riggs* v. *Commercial Mutual Insurance Co.*, 125 N. Y. 7, 25 N. E. 1058, 1059, 21 Am. St. Rep. 716, 10 L. R. A. 684, the court said:

"The policy, if otherwise valid, attached to whatever insurable interest he had, whether as owner or otherwise. What constitutes an insurable interest has been the subject of much discussion in the cases, and is often a question of great difficulty. It is quite apparent that the tendency of decisions in recent times is in the direction of a more liberal doctrine upon this subject than formerly prevailed," citing May on Insurance, sec. 76.

It was there held that a stockholder had an insurable interest in the corporate property of his company. The amount or character of this interest is not material.

█ The owner of an equity of redemption has an insurable interest even though it be entirely worthless.

"The owner of the property has an insurable interest to the extent of the value of the building notwithstanding the existence of a mortgage on the property of sufficient amount to absorb it." *Insurance Company* v. *Stinson*, 103 U. S. 25, 29, 26 L. Ed. 473.

█ "Any title or interest in the property, legal or equitable, will support a contract of insurance on such property. The term 'interest' as used in the phrase 'insurable interest' is not limited to property or ownership in the subject matter of the insurance. Where the interest of insured in, or his relation to, the property is such that he will be benefited by its continued existence or suffer a direct pecuniary injury by its loss, his contract of insurance will be upheld, although he has no legal or equitable title." 26 C. J. 20.

█ "It may be regarded as well settled, that a policy of insurance against fire, is a contract of indemnity against loss by fire, and that the assured must have an interest in the property insured. See *Quarrier, Trustee* v. *[Peabody]* *Insurance Co.,* 10 W. Va. [507, at] p. 522 [27 Am. Rep. 582] and authorities there cited. This interest must be existing, as a general rule, both when the policy is issued and when the loss occurred. But it would be a great error to assume, that by an insurable interest is meant property in the subject insured. The assured has in his property insured

an insurable interest, whenever he holds such a relation to it, that its destruction by fire would involve him in pecuniary loss or would involve others in pecuniary loss, for whom he acts or whom he represents." *Sheppard* v. [*Peabody*] *Insurance Co.*, 21 W. Va. 368.

As indicative of the tendency of this court, it was said in *Tilley* v. *Connecticut Fire Ins. Co.*, 86 Va. 811, 11 S. E. 120:

"Any person who has an interest in the property, legal or equitable, or who stands in such relation thereto that its destruction would entail pecuniary loss upon him, has an insurable interest to the extent of his interest therein, or of the loss of which he is subjected by the casualty."

Henry Bolling and his son, Clarence, conducted a general merchandise business. Clarence married Anne, the plaintiff here. Their domestic relations were unsatisfactory; they were divorced; property rights were adjusted, and both the father and the son turned over to Anne this stock of merchandise and thereafter Anne carried on this business for herself.

Before the policy was issued, Mrs. Bolling explained to this agent the character of her interest.

"The first question Mr. Dennis asked was, who owned that business, and I told him I owned the merchandise, fixtures and everything in the building and he asked who owned the building and I told him my father-in-law, Henry Bolling, and he said that I couldn't insure a building that didn't belong to me, and I told him that Mr. Bolling said to use the building as if it were my own, and that Mr. Bolling said he intended to give it to me later, and he said that there was a little clause that could be added in the policy, and if they didn't want to accept it that way, they could return it."

The father tells us more in detail how a settlement came about and what it was:

"Q. Tell how that happened.

"A. Well, my son and this woman parted and he gave her his part of it to take care of the children and I knew

she couldn't make a living that way and I gave her my part too.

"Q. Do you remember when that was?

"A. In the year '36.

"Q. What time was it with reference to the time they were divorced?

"A. It was right along at the time he was getting a divorce from her, he made the agreement with her.

"Q. At any time before the fire, was anything said by you as to the building?

"A. I told her she could have it as long as she wanted it, it was the same as hers, that it was for her and the children and I intended to give it to her and the children.

"Q. Was she to pay you any rent for the use of it?

"A. No, I didn't want any rent."

█ He had given to his daughter-in-law the house in which she was conducting business so long as she wanted it and without rent. It was his intention to execute to her and to her children at some later day a deed therefor. It was her livelihood. She had no other way by which to support herself and her children. To protect this interest was not to gamble and in undertaking to protect it she violated no public policy. To hold that she had no pecuniary interests in continuing this business upon which she depended for support because she had no legal title is to stick in the bark. She was not only interested, she was vitally interested; her living hung upon it.

██ It is true that the agent tells us he was not told of the character of the title. This conflict the verdict settles. If he did not know that her title was conditional he could not have been troubled by it. There was nothing to submit to his companies, and there was no occasion for any rider. It is true that he thought the insurance asked for was large and said that he would have to split it up and submit the matter to his companies. If he failed to submit to them the character of the applicant's interest disclosed by her to him that was an omission for which she was not liable. They were authorized and issued. This agent was

asked, "Do you pass upon the acceptance of policies?" and answered, "Yes." Certainly they are not void because they are larger than they should have been, and it is equally certain that if the plaintiff had an insurable interest, the agent had a right to insure that interest and to waive the requirement for an unconditional title.

"The powers of the agent are *prima facie* co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." *Insurance Company* v. *Wilkinson,* 13 Wall. 222, 235, 20 L. Ed. 617; *Sheppard* v. *Peabody Insurance Co., supra; Goode* v. *Georgia Home Ins. Co.,* 92 Va. 392, 23 S. E. 744, 53 Am. St. Rep. 817, 30 L. R. A. 842.

From what has been said it follows that the defendant knew, or was charged with knowing, everything which its agent knew.

"Where the company has, with knowledge of the nature of the interest of the insured, recognized such interest as sufficient to support a policy, it can not question the sufficiency of such interest. But a waiver by the insurer is ineffectual to legalize a contract of insurance on property in which insured has no insurable interest whatever." 26 C. J. 36.

In *North River Ins. Co.* v. *Belcher,* 155 Va. 588, 155 S. E. 699, Mr. Justice Epes said:

"The well established rule, in cases such as this, is that where prior to the issuance of a policy containing the provisions hereinabove quoted, the insurer, or its agent, has knowledge, actual or imputed, of facts which under the express terms of the policy render it void or unenforceable from its inception, and then issues the policy, it is equivalent to an assertion by the insurer that such facts do not invalidate the policy, and, if the insured has acted in good faith, the insurer is thereby estopped, after loss, from claiming that *such facts* avoid its liability thereunder. *Virginia F. & M. Ins. Co.* v. *Richmond Mica Co.,* 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846; *Mutual F. Ins. Co.* v. *Ward,* 95 Va. 231, 28 S. E. 209; *Morotock Ins. Co.* v.

*Pankey,* 91 Va. 259, 21 S. E. 487. See also, *North River Ins. Co.* v. *Lewis,* 137 Va. 322, 119 S. E. 43; *Royal Ins. Co.* v. *Poole,* 148 Va. 363, 138 S. E. 487."

He also said:

"The fifth assignment of error is, in effect, that the court erred in not sustaining the objection of the defendant to the notice of motion for judgment, because under the said act of 1928 a policy is rendered void if the interest of the insured is other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned in fee simple, unless otherwise provided by agreement in writing added thereto, even though the insurer, or its agent, may have been fully advised with reference to all the facts regarding the interest and title of the insured and the insured has acted in good faith."

"This assignment of error is without merit for the reasons above stated."

He also said that these principles were not affected by any legislative regulations.

A contract which is against public policy and therefore void in its inception can not be validated by its parties. To it the principles of estoppel do not apply. But where an insurable interest has been established, that interest may be insured and contracts of insurance as to it are subject to those rules governing other private contracts.

Here the plaintiff had an insurable interest in the store-house, and since the character of her title was known to the agent, the principles of estoppel apply.

Policies of insurance are contracts of indemnity, and for that reason the measure of recovery is the value of interest lost. *Thompson* v. *Gearheart,* 137 Va. 427, 119 S. E. 67, 35 A. L. R. 36. That value may be shown by evidence direct or circumstantial. Those circumstances which would ordinarily sway men should continue to influence them when serving as jurors. In theory, at least, they then become the embodiment of common sense.

In estimating the value of this insurable interest, these facts are to be remembered:

The house at the time it was destroyed was worth something more than $2,500. Mr. Bolling told her, "she could have it as long as she wanted it, it was the same as hers, it was for her and the children and I intended to give it to her and children." She had what was in substance a life estate with the possibility of an estate in fee simple, limited only in this—she could not alienate it unless she was afterwards given an estate in fee. She conducted in this building with moderate success a general merchandise business, out of which she was making a living for herself and for her children. She had no other means of support, and there was no place else to which she could turn. Common sense tells us that she will hold on to what she has.

This instruction was given at the request of the defendant:

"The court instructs the jury that it is incumbent upon the plaintiff to prove by a preponderance of evidence each and every allegation contained in the notice of motion; and the jury are instructed that in no event would the plaintiff be entitled to recover more than three-fourths of the actual cash value of the property alleged to have been destroyed, immediately preceding the fire, and the burden of proving such value with reasonable certainty rests upon the plaintiff.

"The court tells the jury that if there be evidence in this case that the store building, upon which the insurance policy was issued, destroyed by fire as set out in the notice of motion, did not belong to the insured, Anne Bolling, that the same belonged to Henry Bolling at the time the policy was issued and at the time of the fire; and there being evidence in this case that certain fixtures, so insured in the policy, had not been paid for, and a reservation of title had been retained by the purchaser to secure such payment, the court tells the jury that plaintiff would not be entitled to recover in respect to the insurance which was so placed upon said building, or which was so placed upon such fixtures as were so encumbered, upon which such reservation of title existed, unless the jury shall further believe from the evi-

dence that the plaintiff, when procuring the policy of insurance sued on, informed the defendant's agent, W. Clyde Dennis, that such building did not belong to her but belonged to her father-in-law, Henry Bolling, and that she informed such agent that there were encumbrances and reservations of title in respect to such fixtures, or that said fixtures were not paid for.

"The court further tells the jury that so far as the burden of proof is concerned, that the burden is upon the plaintiff to satisfy the jury that by a preponderance of evidence that such information in respect to the title or interest in said property was not in herself but in another or subject to lien or reservation of title, or that she owed upon such fixtures."

In every matter here dealt with the jury found for the plaintiff. Since she had an insurable interest in the building, in the fixtures and in the stock of goods, the doctrine of the indivisibility of insurance contracts, sometimes successfully invoked, has no application.

This instruction was asked for by the defendant and was refused:

"The court instructs the jury that if they believe from a preponderance of the evidence in this case the plaintiff is entitled to recover on account of the loss of the store building the amount of recovery on account of the loss of said building should not exceed one-sixth of three-fourths of the actual cash value of such interest as the plaintiff had in said building at the time.of the fire."

We need not concern ourselves with the stock of goods and with the fixtures, for from the evidence and from the jury's verdict it appears that the aggregate amount of all the insurance in all of the policies was less than three-fourths of the actual cash value when these properties were destroyed. Its application to the building itself requires more extended consideration.

This is an appellate court, and on appeal we hear cases upon the theory upon which they were tried in the court below. The case there made is the case we hear on

appeal. Of course the plaintiff must prove her case, either by direct or by circumstantial evidence; but she is not required to prove conceded facts, which also may be shown by direct evidence or by admissions or concessions which fairly establish them.

In the defendant's grounds of defense—there are two of them—it is contended that the entire policy, so far as the building is concerned, is void because the plaintiff misrepresented the character of her interest and because she was never a sole and unconditional owner. This is all. On this rock, both in these statements of defense and in its evidence, the defendant, so far as the building is concerned, built its case.

After a verdict was returned, which tells us what the jury thought from the evidence plaintiff's interest was worth, this motion was made:

"We move to set aside the verdict of the jury, as contrary to the law and evidence, upon the ground of misdirection by the court to the jury, and that your honor enter up judgment for the defendant for the whole of the amount of the verdict of the jury, and as an alternative, that your honor will enter up a final verdict for the two items involved of $200 and $200—$400. We ask that your honor act on the first alternative first then the second."

Here again the contention is made that the policy is void, but it was in substance conceded that $200 should be paid on account of the building if any recovery at all could be had. The $200 which the defendant, in the alternative, asked that judgment go for on account of the building is the $200 for which judgment went.

The building itself was worth at least $2,500. Plaintiff's policy on it was for $200 and so one-sixth of three-fourths of its cash value is $312.

In the light of all that has been said, we think that the court committed no error in permitting this $200 judgment to stand—certainly the defendant thought that it was fair.

It is further contended that these companies themselves knew nothing about the state of the title. If this were true, it could not affect the judgment here.

At the risk of repetition, we restate what took place between the agent and his companies. Certainly he wrote to them after his interview with Mrs. Bolling. If we are to believe Mrs. Bolling, and the jury did, he then knew what her interest was. This is his account of his letters:

"I was advised in a telephone conversation that Mrs. Bolling was in town and would I meet her in my office, and I did and it was there the insurance was applied for, then I submitted a written request to these different companies stating the proposition to them, and a binder was issued December 2 which bound the companies as of that date, but the policies were not written until later and delivered to her on December 14."

No copies of these letters are in the record. Plaintiff is entitled to those presumptions which follow where a defendant has failed to produce evidence under its immediate control. The agent's only possible excuse is that this information was never given him, but in this he is confronted by a jury's verdict. If he did fail, his failure can not be charged against the plaintiff but against him and his company.

Aside from this, if Mrs. Bolling had an insurable interest and if she made known to the agent what that interest was, he had the right to issue and deliver the policy and to waive any defects as to title. To make it valid, it was not necessary that he advise with his company at all. *Hartford Fire Ins. Co.* v. *Haas,* 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64; Id., 8 Ky. Law Rep. 610.

We have dealt with all that is necessary to a decision of this case and so find it unnecessary to deal with other assignments of error. They are without substantial merit.

The judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

GREGORY and EGGLESTON, JJ., dissenting.

GREGORY, J., dissenting.

Anne Bolling obtained in her own name seven fire insurance policies on a building and the fixtures and stock of merchandise therein. The building did not belong to her; she did not have either the legal or equitable title to it, or any legal interest in it whatsoever. Her father-in-law, Henry Bolling, was the owner in fee simple. He did not purchase the policy (one of the seven) now being sued upon, nor did Anne Bolling purchase it for his benefit. After the building was destroyed by fire, Anne Bolling instituted an action on the policy in her own right for the full amount of the policy as she would have done had she owned it in fee.

Anne Bolling used the building as a store, but not under any lease or contract from Henry Bolling, the owner. The most that can be said of her relation to the building and its owner is that he acquiesced and consented to her occupancy, charging her no rent therefor and verbally promising that he would give it to Anne Bolling and her children at some indefinite time in the future. In the eyes of the law she was a tenant at will.

The majority are permitting Anne Bolling to recover in her own right the full amount of the policy on the building just as if she owned the fee, when the loss of her occupancy is all that she has the right to be indemnified for, if we assume that the hazard of such loss of occupancy constituted an insurable interest. It is inconceivable that the court would allow her to recover more than her insurable interest, if she had such interest. That portion of the recovery which exceeds her indefinite and unascertained loss on the building does not belong to her, yet under the opinion of the majority she will be unjustly enriched to the extent of that excess.

It must be admitted that no one should be permitted to be indemnified by a fire insurance policy for more than his loss. One owning less than a fee in a building which has been insured has the burden of proving his interest (if it

is put in issue as was done here) when he sues the insurance company on an indemnity policy of fire insurance.

Here, the quantum of the assumed insurable interest of Anne Bolling on the building has never been determined. It necessarily measures her loss and it is against public policy for her to recover more than *her* loss. She cannot recover for the loss sustained by the owner, Henry Bolling, because she is suing in her own right and for her own benefit—not for his benefit. He could not proceed against the company because he had no policy.

Until such loss as Anne Bolling has sustained by reason of the destruction of the building has been determined by the court upon proper evidence, no judgment can correctly be rendered in her favor. The defendant, in offering instruction No. 1, sought to have the court instruct the jury to this end, but the court refused the instruction. This action, it seems to me, is clearly reversible error. This instruction, if it had been given, would have compelled the jury to ascertain her insurable interest in the building in order to measure her loss or damage.

In the policy sued on, which was one of the seven similar policies, $1,260 of insurance was issued, distributed as follows: $200 on the store building, $860 on the stock of merchandise, and $200 on the furniture and fixtures. There was a clause providing that the company should not be liable for more than three-fourths of the actual cash value of the property at the time of its destruction. If this sum exceeded the face of the policy, then, of course, the amount of recovery would be limited to the face of the policy.

The total amount of Anne Bolling's loss, so far as this policy is concerned, was fixed by the jury under instruction No. 3 at $1,680, and the amount of their verdict was $1,260, the face of the policy. The only loss plaintiff has sustained, with respect to the building, is the deprivation of the uncertain occupancy and use permitted her by Henry Bolling. However, the court is permitting her to recover not only for this loss, which is well-nigh undeterminable, but also for the full face of the policy on the total value of the fee

in the building, $200, while the loss of the fee in the building was suffered not by Anne Bolling, but by Henry Bolling.

The general rule may be stated to be that the insured with a limited interest in a building insured may not recover its full value. "In most of the cases where it is apparent that to allow the insured to recover the full value of the property destroyed, within the amount of the policy, would enable him to realize a profit on his insurance, the courts have limited the recovery to the value of the actual interest of the insured in the property destroyed." See 68 A. L. R. 1344 and the reported case of *Harrington* v. *Agricultural Ins. Co.*, 179 Minn. 510, 229 N. W. 792, 68 A. L. R. 1340.

According to the annotator the foregoing rule is the law throughout the United States. The opinion of the majority, in allowing Anne Bolling a recovery to the full extent of the fee, is in contravention of this rule.

"If, without more, one insures property of another, the contract of insurance is void and carries with it temptations to crime into which we should not be led. It is against public policy. One cannot be indemnified for loss which he did not sustain." (Opinion of the majority.)

This principle is sound and is the law everywhere. A contract against public policy is void in its inception and cannot be validated by its parties. "To it the principles of estoppel do not apply." *Ibid.* This rule applies to the amount to which Anne Bolling is unjustly enriched, to wit, the excess over and above whatever loss she may have sustained by the destruction of the buiding.

The granting of instruction No. 3, offered by the plaintiff, was also reversible error because there was absolutely no evidence to support the recital "that Mr. Dennis then wrote the companies in which he proposed to write the insurance, of his interview and prospect, and they authorized him to close this insurance." The uncontradicted evidence is to the contrary.

It is true that the evidence discloses the fee simple value of the building to have been $2,500. The seven policies on the building aggregated $1,200. The *Franklin Case* disposed

of one policy for $200, leaving $1,000 of insurance still in question. While the sum involved in the instant case, so far as the building is concerned, is only $200, the decision here will be conclusive of all the remaining policies, and will in effect establish that Anne Bolling is entitled to $1,000 (exclusive of the recovery in the *Franklin Case*) for the destruction of a building not owned by her but owned by Henry Bolling.

Anne Bolling's insurable interest is fixed in the opinion at $2,500, the full fee simple value of the building, while at another place in the opinion her interest is established as only a life estate. Both conclusions are incorrect because there is no evidence to support either.

If Mr. Bolling, the owner, were to die, the land upon which this building stood would pass by his will, if he dies testate, or would descend to his heirs at law, if he dies intestate. Anne Bolling would not be one of his heirs at law, and, of course, we do not know who would be his devisees if he dies leaving a will. She certainly could not be a life tenant if during her lifetime the estate could legally pass to another.

Lastly, in the opinion of the majority it is said that the question of insurable interest and its extent was not raised in the trial court. The question was raised on the motion to strike the plaintiff's evidence. It was again raised in the instructions, and finally upon the motion to set aside the verdict. That issue is squarely presented to this court by the assignments of error.

For the above reasons I dissent.

EGGLESTON, J., concurs in dissent.