## J. B. SELPH v. HANOVER FIRE INSURANCE COMPANY OF NEW YORK.

17 So. (2nd) 220                           ,           January Term, 1944

March 17, 1944                                          Special Division A

Rehearing Denied April 5, 1944

*Claude L. Gray,* and *J. B. Rodgers, Jr.,* for appellant.

*Akerman, Dial & Akerman,* for appellee.

THOMAS, J.:

At the close of all the testimony introduced in the trial of the action of appellant against appellee to collect on an insurance policy the jury was instructed to return a verdict for the latter, the court having entertained the view that such a course was justified because at the time the policy issued (1) ownership of the insured property did not rest in the appellant, (2) liens against it were not accurately disclosed, and (3) the purchase price was exaggerated.

We will attempt to reconstruct the transaction from our understanding of the evidence, stressing in the order we have given them the reasons of the judge for his ruling. A truck and trailer were sold to different persons by a dealer who subsequently repossessed them. At the time of the original

sale the retain title contract on the one had been transferred to General Motors Acceptance Corporation; on the other, to First National Bank of Winter Garden. When these vehicles again came into the dealer's hands he sold them to the plaintiff while the interests of these claimants were outstanding. The actual time of consummation of the resale is somewhat confused, but the evidence was not so vague as to warrant the conclusion none of it supported the view that when the policy issued appellant had an insurable interest in the property. It is true the contract of sale signed by him and the dealer was dated 10 July 1941, two days after the policy was executed, but other circumstances refute the contention that until that very time he had no interest. His statement as a witness that he bought the property in May corresponds with the declaration of the date of purchase appearing in the policy.

The testimony of appellant and the dealer are in accord on the promise of the former, as a part of the consideration to equip the truck with new tires and have the motor overhauled, the vehicle having been abused by the first owners. Appellant did this, and it is a fair inference that meanwhile he had paid the dealer $200 on the purchase price. He had sent the dealer as his representative to arrange for the insurance. He drove the property to a distant state, where it was destroyed 17 July 1941, one week after the policy issued. This does not convey the idea that appellant's interest was incepted after the policy, 8 July 1941; was perfected when his contract with the dealer was signed two days later. It indicates, rather, a negotiation beginning two months before with a delivery of the property, a receipt of part of the purchase price, a fulfillment of the promise to equip and repair. The contract for sale was doubtless executed 10 July 1941 that the transaction might be in concrete form, the paper discounted, the liens consolidated. This will, we think, become more apparent when we treat of the next phase of the litigation relative to the true status of the liens when the insurance contract went into effect. So, on this aspect of the controversy we conclude that there was no occasion for instructing a verdict for appellee.

The appellee maintains that there was such a misstatement about the outstanding liens as to vitiate the insurance contract. It is clear that the dealer, acting as agent for the purchaser, called upon the agent of the insurance company and gave him the data on which the policy was based. The former testified he apprised the agent of the unpaid title contracts, on which there was due an aggregate of $1,360, and told him that he intended "to take the mortgage up at the First National Bank of Winter Garden, and the note with GMAC, . . . and make one note for the whole thing, which would leave it there as a balance of $2,000.00." This figure, appearing in the policy under the title "Statements By the Insured" as "The Amount Unpaid," was the total of the balance on the retain title contracts and the amount of $640 to be paid the dealer under the contract between him and the plaintiff. In all the circumstances there was no misrepresentation of the status of the liens so material as to justify the avoidance of the contract. In this connection we have not overlooked the provision in the policy that any loss thereunder should be payable "as interest may appear, to the Insured and General Motors Acceptance Corp." without mention of the balance due the bank or the seller. It is obvious from the latter's testimony about acquainting the agent of the company with his purpose to consolidate his claim, the claim of the bank, and the claim of General Motors Acceptance Corporation that the statement in the policy was made in anticipation of this arrangement.

The third reason given by the trial judge for the instructed verdict, namely, the exaggeration of the purchase price, is a matter of more serious consequence to the appellant.

In the face of the insurance contract under the title, "Declarations," subtitle, "III. Statements By the Insured: 1. Description of Automobile and facts respecting its purchase," appears information which was given to the agent of the company by the dealer, acting as representative of the purchaser. It is shown there that the F.O.B. list price of the property was $2,800; the "Actual Cost to Insured When Purchased Including Equipment," $3,400; the date of the

purchase, May, 1941; the unpaid balance, $2,000. We have already discussed the last two references; the first two became relevant in determining the soundness of appellee's position that there was such a misrepresentation of the value, hence of appellant's equity, as to render the policy voidable if not void.

Before approaching a solution it is necessary to elaborate somewhat on the contents of the contract between the dealer and appellant. As has been said, under any version of the transaction two items of the purchase price were fixed: the claims of General Motors Acceptance Corporation and of the bank, totaling $1,360. The agreement of 10 July mentioned these accounts and provided for the payment of $1.00 in cash to the dealer and $640 in deferred payments. That was all, so far as purchase price was concerned. Both parties agree, however, that the tires were to be furnished and the overhauling done. For these appellant expended $474. When this amount is added to the total of the outstanding debts and the remainder of the purchase price the sum is $2,474. Whether the payment of $200 was included in the $640 due the dealer or was paid in addition to that amount cannot be ascertained from their contract, but from the entire evidence the latter construction is justified. One thing is sure, though, under no interpretation did the "Actual Cost to Insured" reach the $3,400 appearing in the warranty in the policy, or even the $2,800 shown there under "F.O.B. List Price or Delivered Price at Factory Cost Assd." (Whatever that may mean.)

It is patent to us that cost of the insured property was padded. Having decided this fact, we face the legal question whether, because he magnified the cost of the property, appellant should be defeated in his effort to recover.

The contents of the insurance contract are grouped under seven captions. The first is titled "Declarations," and under it appear the statements we have quoted. The last is termed "General Conditions," and there we find two provisions which, read in the light of the authorities on the subject, gives us some concern about the category into which the statements by the insured should fall, that is, whether they

were representations or become warranties. A discussion of the similarities and dissimilarities of representations and warranties may be found in Couch on Insurance, page 2606; 29 Am. Jur., Insurance, page 428. Though the distinction between their characteristics is difficult to define, according to the cases and works we have consulted representations precede the contract, are collateral thereto and not necessarily a part thereof; warranties are a part of the contract itself. Falsity in a warranty amounts to a breach; falsity in a representation may render the contract voidable.

With these brief definitions in mind we quote now two provisions from that part of the policy designated "General Conditions": (1) "This entire Policy shall be void if the Insured has . . . misrepresented any material fact or circumstance concerning this insurance or the subject thereof . . ." and (2) "By acceptance of this Policy the Insured agrees that the statements in the Declarations [which we construe as reference to the first part of the policy already discussed] are his agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the Insured and the Company. . . ."

Under the last quoted portion it seems that the information as to value reached the dignity of a warranty when it was incorporated in the contract and did not remain a mere representation. An insurer need show only that a warranty is untrue, and in this case the inaccuracy of the value declared by the insured, or his agent, is evident.

Statements of value are quite material because they influence the underwriter in deciding upon the risk assumed and the rate of compensation for taking it (Couch on Insurance, page 3442), or, as it has been otherwise said, it affects the willingness of the insurer to enter the contract. In other words, the question has been posed whether, had the true facts been known, a prudent underwriter would have considered the chance loss increased. Scott v. National Reserve Life Ins. Co., 143 Kan. 678, 56 p. 2d 76; 29 Am. Jur., 424.

In this connection it is well to state that the vice president of the Florida corporation, acting as general agent of

appellee, testified that the policy involved in this litigation would not have been authorized had the discrepancy between the supposed purchase price of $3,400 and the actual sale price approximating $2,000 been known.

It has been held that false warranty of the price paid for a car precluded recovery. Kiefer v. Girard Fire & Marine Ins. Co., 285 Pa. 589, 132 A. 706; North River Ins. Co. v. Lewis, 137 Va. 322, 119 S. E. 43. See also Andrews v. Bull Dog Auto Fire Ins. Ass'n., Mo. App., 258 S. W. 714, and Standard Auto Ins. Ass'n. v. West, 262 S. W. 296.

In the instant case it was properly determined by the trial judge that the warranty of purchase price was false and that a contrary verdict could not be rendered because the testimony, construed in a light most favorable to the plaintiff, plainly showed the cost to have been much less than represented.

The judgment is affirmed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.