166 So.2d 206 (1964)
PENINSULAR FIRE INSURANCE CO., Appellant,
v.
Mary Lee FOWLER, Albert L. Fowler and the Housing Authority of the City of West Palm Beach, Appellees.
No. 4304.
District Court of Appeal of Florida. Second District.
July 1, 1964.
Anita Blakeslee and Richard B. Burk, of Scott, Burk, Simon & Royce, Palm Beach, for appellant.
Manley P. Caldwell, Jr., of Caldwell, Pacetti, Foster & Barrow, West Palm Beach, for appellee Housing Authority.
ALLEN, Acting Chief Judge.
Appellant Peninsular Fire Insurance Company, defendant below, appeals a declaratory decree in favor of appellee Housing Authority, also a defendant below.
*207 There is no dispute as to the essential facts of this case. Appellees Fowler, as plaintiffs, sought a declaratory decree as to their right to the proceeds of a fire insurance policy issued to Mary Lee Fowler by defendant-appellant company on August 14, 1961. The policy insured property which was then the subject of condemnation proceedings by defendant-appellee Housing Authority and which was subsequently destroyed by fire.
On August 2, 1961, the Housing Authority filed a condemnation suit against the Fowlers and others, the suit being brought under Chapter 73, Florida Statutes, F.S.A. The Fowlers were served with process in the condemnation suit on August 14, 1961, and on that date insured the property in question against fire. Final judgment for the Housing Authority against the Fowlers in the condemnation suit was recorded on July 20, 1962; the Fowlers having stipulated with the Housing Authority as to the amount of the compensation for their property. On July 25, 1962, the Housing Authority deposited in the Court Registry the sum necessary to pay the compensation. The Fowlers received the sum on August 9, 1962, fifteen days later.
However, on August 7, 1962, thirteen days after the Housing Authority had paid the compensation into court, the insured property was destroyed by fire. Both the Fowlers and the Housing Authority sought to have the proceeds of the insurance policy paid over to them.
The lower court, finding that the entry of the final judgment in the condemnation suit vested the fee simple title to the insured property in defendant-appellee Housing Authority on July 20, 1962, and finding that plaintiffs did not actually receive the compensation money paid into court by the Housing Authority until two days following the date of the fire, entered its final decree ordering the appellant company to pay over the proceeds of the insurance policy to the Fowlers and ordering them thereupon to pay over said proceeds to the Housing Authority. The question presented on this appeal is: Does the record herein sustain the final decree in favor of the Housing Authority?
The appellant company contends that, on the basis of the findings of the lower court as set out in the final decree and the order denying defendant's motion for rehearing, the Fowlers had no insurable interest in the insured property on the date of the loss and the Fowlers therefore are barred by statute from enforcing the policy. It further contends that the policy being void and unenforceable by the Fowlers, there is no possible basis upon which the Housing Authority could assert any claim against the appellant company under a policy to which it was never a party.
We agree and hold that the Fowlers had no insurable interest in the property when the loss by fire occurred so the lower court erred in holding that any liability existed against the insurance company either in favor of the Fowlers or the Housing Authority.
Fla. Stat. § 627.01041 (1963), F.S.A., which is derived from Laws of Florida, ch. 59-205, § 454, provides:
"(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
"(2) `Insurable interest' as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
"(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof."
This statute embodies the recognized principle that one without an insurable interest *208 generally cannot obtain an insurance policy. The rule is based upon the grounds of public policy and this generally applies whether the policy is running on property or on life. Often a statement is made that the policy without insurable interest is a wager policy and therefore invalid. See 18 Fla. Jur., Insurance, § 128, p. 114.
In 18 Fla.Jur., Insurance § 131, the editors state:
"Generally speaking, any person has an insurable interest in property who benefits from its existence and would suffer loss from its damage or destruction. A mere equitable title may be protected by insurance, provided the insured might suffer loss by the destruction of the subject matter of the insurance. And with the same qualification, even a contingent interest may constitute an insurable interest."
while the same work at section 135, under the sub-title "Vendor and Purchaser," states:
"A lessee of property with an option to purchase has an insurable interest therein.
"A purchaser under a conditional sales contract has an insurable interest in the property purchased, even though the seller retains the legal title thereto. The seller under a conditional sale likewise has an insurable interest in the subject matter of the sale, even though the destruction or loss of the property does not release the buyer from liability for the purchase price."
Our Supreme Court, in the case of Phenix Ins. Co. v. Hilliard, 59 Fla. 590, 52 So. 799 (1910), states the rules generally.
"Where a purchaser of personal property takes possession of it, but the title remains in the vendor till the purchase price is paid in full, the vendee in possession has an insurable interest in the property, even though he has not fully paid for it. Reed v. Williamsburg City Fire Ins. Co., 74 Me. 537. But under the terms of the policy the insured must have the `unconditional and sole ownership' of the property. The interest of a purchaser of property, which he has unqualifiedly agreed to buy, and which the former owner has absolutely contracted to sell to him upon definite terms, is the `sole and unconditional ownership' within the true meaning of the ordinary clause upon that subject in insurance policies, because the vendor may compel the vendee to pay for the property and to suffer any loss that occurs. [Citing authority] * * *
"Appellees contend that this rule does not apply to personal property, and cite 2 Clements on Fire Insurance, 170. The rule there announced has some support in cited cases where the vendor reserved the right to retake possession and ownership of the property. The facts in this case are not of that character.
"The just and reasonable purpose of insurance policies in requiring the insured to have the `unconditional and sole ownership' of the property insured is to give protection to only those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property insured might tend to encourage carelessness or wrongdoing in the use or preservation of the property. Wager policies are not approved and should be avoided.
"A conditional sale of personal property by which the vendee takes possession of the property with an unconditional promise to pay for it, but the vendor retains the title till payment in full of the purchase price is made, confers upon the vendor the absolute right of the purchase price, and imposes upon the vendee the unconditional obligation to pay the purchase price, and also casts upon the vendee all the risks of loss incident *209 to the full and complete ownership of the property, unless otherwise specially provided by contract. 6 Am. & Eng.Ency.Law (2d Ed.) 455.
"To be `unconditional and sole,' the interest or `ownership' of the insured must be completely vested, not contingent or conditional, nor in common or jointly with others, but of such nature that the insured must alone sustain the entire loss if the property is destroyed; and this is so whether the title is legal or equitable. Hartford Fire Ins. Co. v. Keating, 86 Md. 130, 38 Atl. 29, 63 Am. St.Rep. 499.
"By fair construction and intendment the `unconditional and sole ownership' of property for the purposes of insurance is in those upon whom the loss insured against would certainly fall, not as a matter of mere contract obligation, but as the result of real bona fide rights in the property insured." (Emphasis added.)
The appellee relies on the case of Heidisch v. Globe & Republic Ins. Co., 368 Pa. 602, 84 A.2d 566, 29 A.L.R.2d 884 (1951), where the facts, in many respects, are similar to the instant case. In that case the Pennsylvania Supreme Court held that an owner of property which had been condemned by eminent domain, but title to which had not yet passed to the condemnor, had an insurable interest in the property entitling him to compensation under a contract of insurance upon loss of the building by fire.
In the Court's opinion, it is stated:
"Under the Act of May 2, 1929, P.L. 1278, § 537, 16 P.S. § 537, title to the property remained in plaintiffs until the County paid the amount of the consent verdict on January 21, 1950. Defendant argues that this is a mere paper title to secure the payment of the award and is not such a title as constitutes an insurable interest. It is further argued that plaintiffs have suffered no economic loss and cannot recover for that reason. These arguments must be rejected.
"It is unquestionably true that a person who has no interest in a property may not recover from an insurance company for damage done by fire to the property. [Citing authority] * * * This case, however, is in no way similar to those above cited. On the contrary, it is analogous to the situation where the insured enters into an agreement to sell the premises and after the signing of the agreement but prior to the passage of title a fire occurs. There, as here, the insured holds title as security for the purchase price. In that situation we have repeatedly held that the vendor possesses an insurable interest. Dubin Paper Co. v. Ins. Co. of N. America, 361 Pa. 68, 63 A.2d 85, 8 A.L.R.2d 1393; State Mutual Fire Insurance Co. v. Updegraff, 21 Pa. 513. See also Reed v. Lukens, 44 Pa. 200. Those cases hold that the person possessed of the legal title has an insurable interest and the insurance company is liable to him under the terms of the policy. * * *" (84 A.2d 566, 567.)
It is noted in the above case that under the Pennsylvania law title would not pass from the property owner to the condemning authority until the condemning authority paid the amount of the verdict, whereas in Florida title passes when the money due is paid into the registery of the court. Fla. Stat. §§ 73.12, 73.13, F.S.A.
The annotation following the case of Heidisch v. Globe & Republic Ins. Co., at 29 A.L.R.2d 888, indicates that in cases similar to the one sub judice where recovery was permitted the condemnation proceeding had not been completed by the taking of title or payment of the amount of the award by the condemnor at the time the loss insured against occurred. These are, of course, readily distinguished on the basis of the latter facts.
In an interesting article in 48 Col.L.Rev. 1163 entitled "Insurable Interest in Property: *210 A Socio-Economic Reevaluation of a Legal Concept," the authors state:
"1. Property Right. In the law of insurable interest, an interest, operationally considered, is such a relation to property that an adverse occurrence may result in economic disadvantage upon the happening. In the usual course of events, the absolute owner of a unit of property is the individual most likely to suffer economically from its destruction. To borrow from the Hohfeldian schema, an absolute owner of property possesses a certain aggregate of rights, privileges, powers and immunities. This very same aggregate in legal semantics bears the appellation `interest,' instantly demonstrating the ambiguity of reference of that word. This ambiguous equating of `interest' and ownership concepts, and the usual association of economic disadvantage with ownership, has channelled juridical analysis of insurable interest into sharp property lines. It is not too much to say that the judicial quest for an incident of ownership is the largest factor to be considered in any discussion of insurable interest, whether the purpose be restatement, reevaluation, or reform.
"Thus it is that to courts, thinking in terms of property interests, insurable interest contains a distinct in rem connotation in the sense that the insured is required to have an enforceable interest in the res, the destruction of which constitutes the insured event. A very common formulation of the property right grouping is in the terms, `an interest that would be recognized and protected by the courts.' This in essence is the conception of a property interest in the thing insured; the test seemingly is whether a court would enforce the interest in the property if the question should arise in an ownership controversy." (48 Col.L.Rev. 1163, 1165.)
See too, Note 44 Va.L.Rev. 278 (1958).
Applications of this "test" and the principles derived therefrom are repeatedly evidenced in the texts and treatises, as in 4 Appleman Ins.L. & P. § 2123 n. 40 (1941), where it is stated:
"Though great liberality is indulged in determining whether insured has anything at hazard in the subject-matter of the insurance, he must have such a right or interest as the law will recognize and protect, which must be of such a character that the destruction of the property will have a direct effect upon it, and not a remote and consequential one. In re Reynolds' Estate, 1920, 109 A. 60, 94 Vt. 149."
See also 3 Couch on Insurance 2d § 24:13 (1960); 29 Am.Jur., Insurance, § 439 (1960); 44 C.J.S. Insurance § 179 (1945).
The effect of alienation of property was discussed in 5 Couch on Insurance § 974:
"Although policies insuring property usually contain provisions avoiding them in case of the alienation of the subject matter thereof, nevertheless, a policy may be avoided in the absence of any such clause, as where, at the time of the loss, the original insured has no interest in the subject matter of the insurance, the theory being that, since a contract insuring property is a personal one which does not run with the land, the contract is to indemnify the person named in the policy against the loss upon property in which he has an insurable interest, existing both at the time of the issuance of the policy, and at the time of the loss, in consequence of which, if he parts with his insurable interest in the property, the contract is at an end."
And reiterated in 8 Couch on Insurance 2d § 37:1047 (1961):
"A policy of insurance may be avoided by an alienation even in the absence of an alienation clause. When the insured makes a transfer of all his *211 interest in the insured property he has no insurable interest therein at the time of the loss thereafter sustained, and recovery is barred on the ground of absence of an insurable interest. * * *"
See also 4 Appleman Insurance L. & P. § 2122 (1941) and 44 C.J.S. Insurance § 196 (1945), the latter stating:
"The general rule being that there must be an insurable interest at the time of the loss as well as at the time of the making of the contract, as is discussed supra § 179, a total extinguishment of the interest of insured in the property after the making of the contract and prior to a loss, as by an absolute transfer of the property or an assignment in bankruptcy, will prevent recovery, under the contract, for the loss. * * *"
The final judgment entered in this case shows that the judgment and compensation were consented to by the Fowlers, owners of the property. They stood to lose nothing by the destruction of the property on the date of the fire since the Housing Authority had paid into the registry of the court the amount due them under the final judgment entered therein. The plaintiffs had the right to withdraw compensation which had been paid into the registry of the court and, in fact, withdrew the money from the court two days after the fire.
In an attempt to establish a continuing interest it was argued that the pre-condemnation owners of the property, the Fowlers, had the right to take an appeal from the final judgment in eminent domain. It is true that there existed a statutory right to appeal but there would be no bona fide right to appeal where the title to the property had passed under a judgment which had been agreed to by the Fowlers and the money due them had been placed into the registry of the court, from which they had a right to withdraw. Incidentally, the condemnor did not have the right to withdraw nor the right to abandon the eminent domain proceedings once the money had been paid into the court. See Conner v. State Road Department, Fla. 1953, 66 So.2d 257.
At the time of the fire the Housing Authority had paid for the property and, in effect, held both equitable and legal title to the property in question. The owners of the property did not have an equitable lien on the property to secure payment because the Housing Authority had already effected payment as provided by the Statutes of Eminent Domain.
Since the insured had no interest left in the property at the time of the fire, we must reverse the lower court and remand for further proceedings not inconsistent with this opinion.
Reversed.
SHANNON and KANNER, (Ret.), JJ., concur.