# Richmond

## Home Insurance Company of New York v. M. Dan Dalis, Et Al.

April 26, 1965.

Record No. 5898.

Present, All the Justices.

*Edward A. Marks, Jr. (Sands, Anderson, Marks & Clarke,* on brief), for the plaintiff in error.

*Norris E. Halpern (Halpern & Jacobson,* on brief), for the defendants in error.

I'ANSON, Jr., delivered the opinion of the court.

Plaintiffs, M. Dan Dalis and Nathan Ringler, filed a motion for judgment against the defendant, Home Insurance Company of New York, to recover on a fire insurance policy for loss of two barns on property owned by them as tenants in common. Defendant admitted in its responsive pleadings the existence of the policy of insurance and the destruction of both buildings by fire, but denied that plaintiffs had an insurable interest in the buildings because at the time of the fire they did not have title to the land on which the buildings were situated, and that plaintiffs had suffered any loss as a result of the fire.

Pursuant to an agreement of the parties, all facts deemed material were stipulated and submitted to the court for determination of the legal issues presented. It was further agreed that if the court's decision was favorable to plaintiffs the question of the quantum of recovery would be submitted to a jury for determination.

The pertinent parts of the agreed stipulation are as follows: On January 26, 1962, the defendant renewed a fire and extended coverage insurance policy on two barns located on plaintiff's property in the City of Norfolk, Virginia, insuring each building for $6,000. The policy of insurance covered the period from February 9, 1962, through February 9, 1965, and was in full force and effect on the 28th day of April, 1963, when both buildings, which were in possession of and occupied by the plaintiffs, were completely destroyed by fire, without fault on their part.

On April 22, 1963, the State Highway Commissioner of Virginia filed his certificate for recordation in the clerk's office of the Corporation Court of the City of Norfolk, Virginia, pursuant to § 33-70.4, Code of 1950, as amended, 1953 Repl. Vol., 1964 Cum. Supp., Acts of Assembly of 1958, ch. 581, certifying that he estimated $113,666 to be the fair value for the 13.353 acres of plaintiffs' lands described therein and damages to the remainder, if any, taken for the construction of an interstate throughway to be known as route 64.

The buildings destroyed by the fire of April 28, 1963, were within the right of way described in the certificate of the State Highway Commissioner.

On April 29, 1963, the day after the fire, the State Highway Department notified plaintiffs to vacate the buildings within 60 days thereafter, or not later than June 28, 1963.

At the time the stipulation was entered into, October 29, 1963, no agreement had been reached between the Commissioner and the plain-

tiffs, pursuant to Code § 33-70.11, as amended, as to compensation for the land taken and damages caused by said taking; nor had the compensation due plaintiffs been determined by condemnation proceedings; nor had an award been made by the commissioners, pursuant to Code § 33-70.9; nor had commissioners been appointed by the court to make an award; nor had the final order been entered confirming absolute and indefeasible title to the land in the Commonwealth.

On May 29, 1963, defendant, upon learning of the recordation of the certificate by the State Highway Commissioner, sought to cancel the policy of insurance as of April 22, 1963, and tendered the return premium it estimated to be due plaintiffs by virtue of said cancellation. Plaintiffs refused to accept the returned premium and denied the right of defendant to cancel the policy.

On September 27, 1963, plaintiffs, pursuant to Code § 33-70.6, applied to the Corporation Court of the City of Norfolk in the proceeding therein pending, styled *State Highway Commissioner v. M. Dan Dalis and Nathan Ringler and Zelda Ringler, husband and wife, co-tenants*, for an order distributing the sum of $113,666 to them, after payment of certain liens, and an order was entered by the court directing the payment of the liens and distribution of the funds.

The actual value of each of the insured barns was in excess of $6,000, and the rental value of the two buildings was $300 per month.

The trial court ruled that plaintiffs had, on April 28, 1963, the date of the fire, an insurable interest in the barns sufficient to support the contract of insurance, and that their interest on the date of the fire was to be measured by the value of the barns at that time. The case was then submitted to a jury to fix damages, and a verdict was rendered awarding plaintiffs $6,000 for the loss of each barn, or a total of $12,000. Judgment was entered on the jury's verdict, and we granted defendant a writ of error.

Defendant assigns numerous errors, but they present only two questions for our determination. They are: Did the plaintiffs have an insurable interest in the barns on the date of the fire? and, did they suffer any loss as a result of the destruction of the buildings?

Defendant says the trial court erred in construing §§ 33-70.1 through 33-70.11, Code of 1950, as amended, 1953 Repl. Vol., 1964 Cum. Supp., Acts of Assembly of 1958, Ch. 581, which provide for "the taking of possession and title to property by the State Highway Commissioner before and during condemnation."

Defendant argues that under § 33-70.4 the interest or estate of the plaintiffs in the property was terminated on April 22, 1963, the day on which the certificate of the Commissioner was recorded in the clerk's office, and title thereto was forthwith vested in the Commonwealth. Thus it says the plaintiff had no insurable interest in the barns sufficient to support the contract of insurance. We do not agree with defendant's argument.

It is true that § 33-70.4 provides that upon recordation of the Commissioner's certificate, "the interest or estate of the owner of such property shall terminate and the title to such property or interest or estate of the owner shall be vested in the Commonwealth," but that is not all the section provides. It concludes with the language that the title in the Commonwealth "shall be defeasible until the reaching of an agreement between the Commissioner and such owner, as provided in § 33-70.11, or the compensation determined by condemnation proceedings as hereinafter provided."

A defeasible title is "one that is liable to be annulled or made void * * *." Black's Law Dictionary, Deluxe, 3rd ed., p. 539.

Under Code § 33-70.7, the certificate filed by the Commissioner may be amended with the court's consent to correct errors appearing therein at any time before distribution of all or any part of the fund deposited by virtue of the Commissioner's certificate, and "the court may invalidate such certificate and direct an amended certificate to be filed in lieu thereof." The section further provides that: "A petition filed by the Commissioner with the court, setting forth any error in such certificate *or the necessity of any change* therein shall be deemed sufficient basis for the invalidation of such certificate." (Emphasis added.)

Code § 33-70.9 provides that: "At any time after recordation of such certificate, but within 60 days after completion of the construction of the highway," if it is not possible for the Commissioner and the owners to agree on compensation or damages, the Commissioner shall institute condemnation proceedings as provided for in this Article, unless said proceedings have been instituted prior to the recordation of the certificate. "The final order confirming the commissioners' award shall confirm absolute and indefeasible title to the land, or interest therein sought, in the Commonwealth and shall be spread in the current deed book * * *."

Under the provisions of the aforementioned statutes the Commonwealth acquired, upon the filing of the Commissioner's certificate, title to plaintiffs' property, but it was subject to defeasance and other steps

were necessary before it could ripen into an absolute and indefeasible title. The defeasible title in the Commonwealth was capable of being defeated by a petition filed by the Commissioner (§ 33-70.7) requesting the court to invalidate the certificate because of error in it or the "necessity of any change." The language "necessity of any change" does not limit the right of the Commissioner to have the certificate amended for mere errors. It is broad enough to permit the Commissioner to have the certificate invalidated if he deems it necessary to change the location of the highway and to withdraw and abandon the condemnation proceedings at any time before an order has been entered distributing all or any part of the funds deposited by virtue of the certificate. Thus the risk of destruction of the barns remained with plaintiffs on the day of the fire because the defeasible title could have been annulled by the action of the Commissioner requesting the court to invalidate the certificate and the condemnation proceedings could have been abandoned as to all or any part of plaintiffs' property.

In 1952 Virginia revised its insurance code[1] and for the first time the term "insurable interest" in property was defined by statute through the enactment of Code § 38.1-331, 1953 Repl. Vol. It reads as follows:

"No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.

"The term 'insurable interest' as used in this section means any lawful and substantial economic interest in the safety or preservation of the subject of insurance free from loss, destruction or pecuniary damage."

This statute merely codified the decision and reasoning in *Liverpool, Etc., Ins. Co.* v. *Bolling*, 176 Va. 182, 10 S. E. 2d 518 (1940), where this Court cited with approval the following:

"Any title or interest in the property, legal or equitable, will support a contract of insurance on such property. The term 'interest,' as used in the phrase 'insurable interest,' is not limited to property or ownership in the subject matter of the insurance. Where the interest of the insured in, or his relation to, the property is such that he will be benefited by its continued existence or suffer a direct pecuniary injury by its loss, his contract of insurance will be upheld, although he has no legal or equitable title." 176 Va. at p. 188, 10 S. E. 2d at p. 520.

---

[1] §§ 38-1 to 38-564, Code of 1950, became §§ 38.1-1 to 38.1-734, 1953 Repl. Vol.

See 44 Va. L. Rev. 278, 289-293. For meaning of term "insurable interest" see also 44 C. J. S., Insurance, § 180, pp. 876, 877; 29 Am. Jur., Insurance, § 439, p. 782; 10 Mich. Jur., Insurance, § 171, p. 492.

The recent case of *Peninsular Fire Insurance Co.* v. *Fowler*, 166 So. 2d 206 (Fla. App. 1964), strongly relied on by defendant, is readily distinguishable on the facts. There a final judgment confirming an agreement of the compensation for the property taken had been entered before the fire occurred.

In the present case, the plaintiffs had a lawful and substantial economic interest in the safety of the barns on the day of the loss. They were not only in possession and occupancy of the buildings, in which they had stored valuable materials when the fire occurred, but had the right to continue occupying them for sixty days from April 29, 1963. If the State Highway Commissioner had petitioned the court to invalidate the certificate and had abandoned the right of way over the land on which the buildings were located, the defeasible title in the Commonwealth would have been annulled. Until the right of the State Highway Commissioner to have the certificate invalidated and to abandon the condemnation proceedings had expired, the plaintiffs would have a pecuniary interest in protecting the buildings against loss by fire. Thus plaintiffs had an interest in the buildings that they needed to protect against loss, and they had an insurable interest in them when they were destroyed by fire.

██ Defendant says that plaintiffs would suffer no pecuniary loss by reason of the fire and they are not entitled to recover under the policy of insurance sued on. It argues that to permit them to recover would amount to a double recovery.

In *Clements* v. *Clements*, 167 Va. 223, 188 S. E. 154, this Court cited with approval the holding in the case of *Harrison* v. *Pepper*, 166 Mass. 288, 44 N. E. 222, 223, 33 L. R. A. 239, 55 Am. St. Rep. 404, wherein it was said:

"* * * The contract of insurance is a personal contract and inures to the benefit of the party with whom it is made and by whom the premiums are paid. It is a contract of indemnity against loss. The sum paid 'is in no proper or just sense the proceeds of property.' [Citing cases ] * * * Whether the amount of indemnity received by the defendant for her loss was more or less than the value of her interest cannot affect the plaintiff." 167 Va. at p. 233, 188 S. E. at p. 158.

Here plaintiffs' claim for recovery is based on contract. The risk of destruction at the time the fire occurred remained with the plaintiffs and the insurance contract was personal. They had an insurable

interest in the buildings when they were destroyed by fire and they suffered a loss. Defendant cannot escape liability of its contractual obligation by reason of plaintiffs' dealings with a third party who is not even a party to this proceeding. See *Heidisch* v. *Globe & Republic Insurance Company of America*, 368 Pa. 602, 84 A. 2d 566, 567, 29 A. L. R. 2d 884; *Edlin* v. *Security Insurance Company*, 269 F. 2d 159, 162 (7th Cir.), cert. den. 361 U.S. 931, 932, 80 S. Ct. 370, 371, 4 L. ed. 2d 354.

The parties agreed in the stipulation filed that the value of each barn on the date of the fire was greater than the amount it was insured for. Thus the verdict of the jury on which the trial court entered judgment was proper under the law and facts of this case, and will not be disturbed by us.

For the reasons stated, the judgment of the lower court is

*Affirmed.*