Richmond

## CASTLE CARS, INC.

v.

## UNITED STATES FIRE INSURANCE COMPANY

January 16, 1981.

Record No. 781705.

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ.

*David B. Hagan (Dean P. Collias*, on brief), for appellant.
*Benjamin A. Hubbard (Outland, Gray, O'Keefe & Hubbard*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This appeal poses the question whether a *bona fide* purchaser for value has an insurable interest in stolen property.

The facts are stipulated. Castle Cars, Inc. (the dealer), bought a used car for $2600 and received the seller's assignment of a title certificate issued by the Division of Motor Vehicles. That night the car was stolen from the dealer's lot. The dealer filed a claim under the theft provisions of its garagekeeper's liability insurance policy with United States Fire Insurance Company (the insurer). The insurer paid the claim, and the dealer assigned the title certificate to the insurer in accordance with the subrogation provisions of the policy. Subsequent investigation disclosed that the car had been stolen from its rightful owner, but since it bore a Vehicle Identification Number plate which had been transferred by the thief from a wrecked vehicle of similar description, the true owner was never identified. The car was never recovered, and the insurer filed suit for reimbursement from the dealer. Finding that the dealer had no insurable interest in the stolen vehicle, the trial court entered judgment for the insurer.

The question we consider is one of first impression in this

Court. Although courts in sister states are divided on the issue, they agree that a property insurance contract is void unless the insured has an "insurable interest" in the property insured. J. Appleman, Insurance Law and Practice § 761 (1941). The reasons for the rule are grounded in public policy. "If . . . one insures the property of another, the contract of insurance is void and carries with it temptations to crime into which we should not be led. It is against public policy." *Liverpool, Etc., Ins. Co.* v. *Bolling,* 176 Va. 182, 187, 10 S.E.2d 518, 520 (1940). "In absence of an interest in the property to be insured, [an insurance] contract becomes in essence a wager which will not be sanctioned by the courts." *Skaff* v. *United States Fidelity & Guaranty Company,* 215 So.2d 35, 36 (Fla. Dist. Ct. App. 1968). "The anti-wagering considerations seem to be actually based on the fear that the insured will connive at the destruction of the property in order to profit from the insurance. . . ." Annot., 33 A.L.R.3d 1417, 1420 (1970).

■ Courts do not agree, however, upon what constitutes an insurable interest. The disagreement apparently stems from the disparate views expressed by Lord Lawrence and Lord Eldon in the old English case of *Lucena* v. *Craufurd,* 2 Bos. & Pul. (N.R.) 269, 127 Eng. Rep. 630 (1806). Note, *Insurable Interest in Property in Virginia,* 44 Va. L. Rev. 278, 279 (1958). Lord Lawrence believed that a person has an insurable interest if he has "some relation to, or concern in the subject of the insurance" which may be prejudiced "by the happening of the perils insured against" and he "is so circumstanced with respect to" the insured subject "as to have a moral certainty of advantage or benefit" sufficient to make him "interested in the safety of the thing." 2 Bos. & Pul. (N.R.) at 302, 127 Eng. Rep. at 643. Disagreeing, Lord Eldon felt that an interest is insurable only if it is a legal or equitable right enforceable in law or chancery. "[E]xpectation", he said, "though founded on the highest probability, [is] not interest", *id.,* at 323, 127 Eng. Rep. at 651, and "[i]f moral certainty be a ground of insurable interest, there are hundreds, perhaps thousands, who would be entitled to insure" the same property, *id.* at 324, 127 Eng. Rep. at 651. In short, Lord Lawrence held that factual expectation, if grounded in moral certainty, was sufficient, while Lord Eldon required legal or equitable entitlement.

■ Our Court has indicated that it considers the Eldon view too restrictive. Although the interest held insurable in *Tilley* v. *Connecticut Fire Ins. Co.,* 86 Va. 811, 11 S.E. 120 (1890), was an

enforceable equitable right, the Court expressed a view in dictum much like that of Lord Lawrence:

> "Any person who has any interest in the property, legal or equitable, or who stands in such a relation thereto that its destruction would entail pecuniary loss upon him, has an insurable interest to the extent of his interest therein, or of the loss to which he is subjected by the casualty."

*Id.* at 813, 11 S.E. at 120.

The *Tilley* dictum influenced later decisions. In *Bolling, supra,* we noted that "[e]verywhere there is a tendency to broaden the definition of an 'insurable interest;' neither legal nor equitable title is necessary." 176 Va. at 187, 10 S.E.2d at 520. There, in a suit on a fire insurance policy, the plaintiff alleged that her father-in-law had authorized her to use his building to conduct a business and had promised to give it to her later. On appeal from a judgment for the plaintiff, the insurance company contended that the plaintiff had no insurable interest in the building. Quoting the dictum in *Tilley,* we approved the following rule:

> " 'Any title or interest in the property, legal or equitable, will support a contract of insurance on such property. The term "interest" as used in the phrase "insurable interest" is not limited to property or ownership in the subject matter of the insurance. Where the interest of insured in, or his relation to, the property is such that he will be benefited by its continued existence or suffer a direct pecuniary injury by its loss, his contract of insurance will be upheld, although he has no legal or equitable title.' 26 C.J. 20."

*Id.* at 188, 10 S.E.2d at 520.

In dissent, a minority of the Court observed that the plaintiff "did not have either the legal or equitable title to [the building], or any legal interest in it whatsoever." *Id.* at 197, 10 S.E.2d at 524. Yet, the majority concluded that "[t]o hold that [the plaintiff] had no pecuniary interests in continuing this business upon which she depended for support because she had no legal title is to stick in the bark", *id.* at 190, 10 S.E.2d at 521, and held that the plaintiff had an insurable interest to the full extent of the fee simple value of the building.

█ The rule approved by the majority was tacitly adopted by the General Assembly. By Acts 1952, c. 317, the term "insurable interest" was defined to mean "any lawful and substantial economic interest in the safety or preservation of the subject of insurance free from loss, destruction or pecuniary damage." Code § 38.1-331. We construed the effect of that statute in *Insurance Company* v. *Dalis,* 206 Va. 71, 141 S.E.2d 721 (1965). In that case, the State Highway Commissioner condemned the plaintiffs' property. Six days after the Commissioner filed his certificate of taking, two barns on the land were destroyed by fire, and the plaintiffs sued on their insurance policy. The insurance company maintained that, since title had passed when the certificate was recorded, the plaintiffs had no insurable interest in the property. Quoting the rule approved in *Bolling,* we said that Code § 38.1-331 "merely codified the decision and reasoning" of the majority opinion there. *Id.* at 75, 141 S.E.2d at 724. Finding that the title acquired by the Commission "was subject to defeasance", *id.* at 74, 141 S.E.2d at 723, and that the plaintiffs were "in possession and occupancy of the buildings" and had "a pecuniary interest . . . that they needed to protect against loss", *id.* at 76, 141 S.E.2d at 724, we held that "they had an insurable interest in them when they were destroyed by fire", *id.*

The plaintiffs in *Bolling* and *Dalis* had substantial economic interests in the property insured but no vested right, legal or equitable. The rule applied there closely resembles the Lawrence definition of insurable interest.*

█ Under the facts stipulated here, the dealer had an "economic interest in the safety or preservation of the subject of insurance", Code § 38.1-331, and that interest, measured by the purchase price, was certainly "substantial". The insurer makes the point that the statute requires that an interest, "to be insurable, must also be a lawful interest" and insists that "[t]he interest held by a purchaser of stolen property cannot be lawful".

Although the dealer acquired what reasonably appeared to be proper paper title to the car, it is true that it acquired no legal title;

---

* "[T]he factual expectation concept is the true definition of insurable interest, phrasing insurable interest strictly in terms of a relationship to property such that the destruction of the property results in economic disadvantage, and recognizing technical property interests as merely particular types of this relationship."

Harnett and Thornton, *Insurable Interest in Property: A Socio-Economic Reevaluation of a Legal Concept,* 48 Colum. L. Rev. 1162, 1175 (1948).

a thief takes no title in the property he steals and can transfer none. But under the rule applied in *Bolling* and *Dalis,* the interest need not be legal or equitable title to be insurable. And, as we construe the statute codifying that rule, a "substantial economic interest" is an insurable interest if it is "lawful" in the sense that it was not acquired in violation of law. As used in this context, the word "lawful" is not synonymous with the word "legal". An interest enforceable against the world is legal. An interest acquired in good faith, for value, and without notice of the invalidity of the transferor's title is lawful and enforceable against all the world except the legal owner. We share the view of those courts which have held that such an interest in a stolen motor vehicle is an insurable interest. *See, e.g., Granite State Insurance Co.* v. *Lowe,* 362 So.2d 240 (Ala. App. 1978), *cert. denied, sub nom. Ex Parte Granite State Ins. Co.,* 362 So.2d 241 (1978); *Skaff* v. *United States Fidelity & Guaranty Company, supra; Reznick* v. *Home Insurance Co.,* 45 Ill. App.3d 1058, 360 N.E.2d 461 (1977); *Norris* v. *Alliance Insurance Co.,* 1 N.J. Misc. 315, 123 A. 762 (1923); *Scarola* v. *Ins. Co. of North Amer.,* 31 N.Y.2d 411, 292 N.E.2d 776, 340 N.Y.S.2d 630 (1972); *Treit* v. *Ore. Automobile Ins. Co.,* 262 Or. 549, 499 P.2d 335 (1972); *Barnett* v. *London Assurance Corp.,* 138 Wash. 673, 245 P.3 (1926). *See also,* W. Vance, Law of Insurance 172 (3d ed. Anderson, 1951).

The parties agree that the dealer acquired its interest in the car as a *bona fide* purchaser for value without notice that the car was stolen property. Applying the principles in *Bolling* and *Dalis* and the statute as we have construed it, we hold that the interest the dealer acquired was economic, substantial, and lawful and that the trial court erred in ruling that such interest was not insurable. The judgment will be reversed and final judgment for the dealer will be entered here.

*Reversed and final judgment.*

HARRISON, J., dissenting.

I would follow the line of cases, grounded in sound public policy, holding that no one acquires an insurable interest in stolen property. In *Bolling* and *Dalis,* relied upon by the majority, the insureds clearly had a lawful, legitimate, and substantial economic interest in the properties insured. There, neither the properties nor the insureds were in any way suspect. Here, we are dealing with stolen property

acquired from a thief. The majority holds that the interest acquired by the automobile dealer was economic, substantial, and lawful. I disagree. The person from whom the dealer acquired the automobile had no title, legal or equitable, no right of possession, and could pass no "legal" or "lawful" interest in the automobile. The thief could only surrender physical possession of that which he illegally acquired and possessed.

Admittedly the dealer had a financial investment involved by virtue of his $2600 payment for the stolen vehicle. However, this investment and the benefit and enjoyment by the dealer of its purchase was assured only if the theft remained undetected and its possession of the stolen goods went unchallenged. Therefore, protection of the dealer's "interest" depended upon the success of a thief's larcenous transaction. The court that decided *Bolling,* and the General Assembly that enacted Code § 38.1-331, never envisioned that such an "interest" could become an insurable interest.

The decision in this case not only reverses public policy but comes at an inopportune time in an era of mounting crime. By broadening the definition of an insurable interest, we decrease the risk taken by the purchaser of stolen property and make easier the "fencing" of such property by robbers and thieves. It also removes the incentive for an insured purchaser to take proper precaution, to scrutinize, and to make careful inquiry of the reliability, honesty, and integrity of those who offer to sell and deliver articles of personal property.

I would affirm the judgment of the lower court.