## CIRCUIT COURT OF FAIRFAX COUNTY

Tom Dodson, Sr.

v.

City of Fairfax
and Martin Gallagher, Jr.

October 9, 1998

Case No. (Chancery) 153431

BY JUDGE M. LANGHORNE KEITH

This matter was heard on September 30, 1998. I have now had an opportunity to review the cases submitted and the argument of counsel and make the following findings of fact and conclusions of law.

### I. *Findings of Fact*

In 1972 Martin Gallagher, Jr., purchased a yellow 1966 Cord automobile replica for $1,000.00. He used the Cord primarily to promote his gasoline service station located in Montvale, New Jersey. The Cord was parked in front of the station and was successful in attracting customers to the station. By 1977, exposure to the elements had taken its toll, and the Cord needed to be rehabilitated. One Ginsberg had offered to buy the Cord from Gallagher in early 1977. When this offer was refused, Ginsberg, who already owned a blue Cord, proposed that he restore Gallagher's Cord. His proposal was accepted in late 1977 with an agreed completion date of Memorial Day, 1979. Gallagher paid Ginsberg some $4,000.00 to restore the Cord. As Memorial Day, 1979, approached, Ginsberg reported that Gallagher's car would not be ready and loaned Gallagher his blue Cord to drive in the Montvale Memorial Day parade. From that point on, Gallagher heard nothing from Ginsberg. Having discovered that Ginsberg's telephone had been disconnected, Gallagher reported his Cord stolen to the Montvale police. The VIN number for

Gallagher's Cord was AC1041. The police entered the Cord in the national register of stolen vehicles but used an incorrect VIN number. Believable testimony establishes that Gallagher, from 1978 onward, queried the police every two or three months to determine if they had located the car.

In 1977 Gallagher's son, who had become interested in antique cars and replicas, got his father's permission to see if he could trace the stolen Cord.[1] The younger Gallagher discovered that the police had entered the wrong VIN number in the computer. When this was corrected, the Cord was quickly traced to the City of Fairfax where Tom Dodson, Jr., had purchased the Cord as a Christmas present for his father, plaintiff Tom Dodson, Sr. Dodson, Jr., bought the Cord from one Jerri Collins, a resident of Portage, Wisconsin, on September 4, 1997. The City of Fairfax police notified Mr. Dodson that the Montvale police were seeking to recover the Cord, and Dodson delivered the Cord to the City of Fairfax. Because the City proposed to return the Cord to Montvale, the Dodsons filed this chancery action to temporarily enjoin the Cord's return and for a declaratory judgment that the Cord was Mr. Dodson, Sr.'s free of any interest of Mr. Gallagher. An injunction was entered on February 13, 1998, prohibiting the City of Fairfax from releasing the Cord until further order of the Court.[2]

The evidence established that in 1981, C. K. Troutwine purchased a Cord from one Doug Johnson, a New Jersey resident. The VIN number had been removed from the car which was delivered in parts, but Johnson gave Troutwine a title using a VIN of AC1041. As the VIN was not on the Cord Troutwine bought from Johnson, Troutwine had a VIN plate manufactured and installed on the Cord indicating that its VIN was AC1041.[3] The Gelcoat (i.e.,

---

[1] In 1983 Gallagher had hired a private investigator to see if he could locate Ginsberg and the Cord. The investigator found Ginsberg in California but not the car. The investigator reported that the car was probably still in New Jersey. Because of the cost involved and the unlikelihood of collecting a judgment, Gallagher decided not to pursue a civil action against Ginsberg.

[2] The original Bill of Complaint was filed on February 3, 1998. Both Dodsons were plaintiffs. An amended Bill of Complaint was filed on May 26, 1998. In the amended Bill, the only plaintiff is Mr. Dodson, Sr. The amended Bill raises the issues of waiver, laches, abandonment, and estoppel, as well as the "true identity" of the vehicle.

[3] Troutwine, a Cord replica automobile expert, testified that there were no confidential VINs placed on the Cord replicas. "The only identification number on any of the cars that I know of that were produced was a plate on the cowl underneath the hood." Troutwine testified that the Cord he bought from Johnson did not have such a plate.

the color) on the Cord had been completely ground off when Mr. Troutwine bought the car. In the process of Troutwine's restoration of the Cord, he painted it maroon.[4] In 1983 or 1984, Troutwine traded the Cord to a Mr. Parr in Terre Haute, Indiana. The car was then sold to someone in Missouri who sold it to Jerry Collins' husband, now deceased. After considering all the evidence, I find that the Cord purchased by Gallagher and the Cord purchased by Dodson are one and the same and that Dodson's title to the Cord derives from Ginsberg.

## II. *Conclusions of Law*

Plaintiff asserts that Gallagher has waived or abandoned his claim to the Cord or is guilty of laches such as to preclude him from claiming he is the rightful owner.

The parties agree that this matter is controlled by the common law of Virginia and the UCC is not applicable. There can be no doubt that a thief takes no title in the property he steals and can transfer none. Likewise, there is no question that Mr. Dodson acquired his interest in good faith, for value, and without notice of the invalidity of his transferor's title. Thus, his interest is lawful and enforceable against all the world, except the legal owner. *Castle Cars v. U.S. Fire Ins. Co.*, 221 Va. 773, 778 (1981). There are compelling equities in favor of each claimant here, Dodson, the innocent purchaser, and Gallagher, the innocent theft victim. But the rule that a thief cannot pass good title is both venerable and universal and is designed, at least in part, to keep the Commonwealth from becoming a marketplace for stolen goods. Thus, Gallagher must prevail unless Dodson can show that Gallagher waived or abandoned his claim or that laches prevents him from asserting it.

The mere lapse of time without circumstances leading to a conclusion that a right has been abandoned is not considered laches. *Valley Bank v. Fidelity Co.*, 153 Va. 484, 496 (1929). Here, the evidence is not that Gallagher abandoned his claim but rather persisted in his inquiries to the police until the time the Cord was finally located in Fairfax. Dodson asserts that Gallagher, once he found Ginsberg in California in 1983, was bound to pursue him civilly and that his failure to do so indicates an abandonment of Gallagher's claim. The problem with this argument is that the evidence does not support a finding

---

[4] Troutwine testified that the Cord's original color was listed as maroon. Another Cord expert, Stanley A. Gilliland, testified that the manufacturer's records were notoriously inaccurate and several Cords were delivered in different colors from the color indicated in the records.

that Gallagher had located his car but only Ginsberg. Although there does not appear to be any Virginia cases on this precise issue,[5] and counsel have cited none, cases in other jurisdictions indicate that neither statutes of limitation nor the concept of laches can commence to run until the rightful owner has either located his property or in the exercise of reasonable diligence should have located his property. See, e.g., *In re 1973 Tractor v. Casey*, 816 P.2d 1126 (1991); *Republic of Turkey v. Metropolitan Museum of Art*, 762 F. Supp. 44 (S.D. N.Y. 1990); *Vaught v. Gatlin*, 120 P. 273 (Okla. 1911). Here, I find that Gallagher did everything a reasonable owner should do to recover his property. He reported the theft to the police and periodically let the police know that he had not abandoned his claim. To require more would encourage or require rightful owners to indulge in perhaps dangerous self help in order to preserve their rights.

The preliminary injunction entered on February 13, 1998, shall be dissolved and a decree entered that the rightful owner of the Cord is Mr. Martin Gallagher, Jr.

---

[5] But cf., *Gwin v. Graves*, 230 Va. 34, 37 (1985) (detinue action in the bailor-bailee context).