# CIRCUIT COURT OF THE CITY OF NORFOLK

Nationwide Insurance Co.

v.

Ronald E. Dudley et al.

February 10, 2000

Case No. (Law) L99-337

BY JUDGE MARC JACOBSON

Nationwide Insurance Company has filed an Amended Motion for Declaratory Judgment in which Nationwide moves this Court to declare the rights and obligations of Defendant Ronald E. Dudley or any other person including the other named Defendants Sunny Side Valley Corporation (Sunny Side), Elizabeth Building and Loan Association, Inc. (Elizabeth), and Gwen Murphy under Nationwide policy 53H0086-673 on 444 St. Bride's Road, Chesapeake, Virginia 23322 (444) and to grant the relief sought by Nationwide after determination of the rights and obligations of Nationwide and Dudley and all other named Defendants.

Dudley contacted by phone Nationwide agent JoAnn Emmons shortly prior to March 28, 1995, indicating that he wished to obtain an insurance policy on 444 and Emmons initially took information from Dudley by way of an application during the telephone conversation. Emmons asked Dudley certain questions set forth on the application including whether or not Dudley was the owner of 444, to which specific question Dudley answered affirmatively. Dudley was also asked:

Has insured or family member been sued, filed bankruptcy, had repossession/judgment within the last seven (7) years?

Dudley answered this question "no." On March 28, 1995, Dudley personally appeared before Emmons at her office and was presented the written application completed over the telephone and, according to Emmons, Dudley read the application and signed it without making any changes to the answers or responses on the application.

The evidence is clear that Dudley did, in fact, have several judgments against him, and the evidence is also clear that on March 28, 1995, Dudley did not own nor have legal title to 444. The deed of trust on 444 was foreclosed apparently sometime in 1994 and was placed in another's name as part of what Dudley would characterize as a "friendly arrangement" and, after March 28, 1995, was transferred to Sunny Side and Dudley.

The critical issue in this case is whether Dudley's answers or statements on the application bar recovery on the policy. Va. Code § 38.2-309 reads in part as follows:

> No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue.

"Whether a [mis]representation is made and the terms on which it is made are questions of fact for the jury. . . ." *Chitwood v. Prudential Ins. Co. of Am.*, 206 Va. 314, 318. Misrepresentation bars recovery on the policy if the, "statement was material to the risk when assumed and was untrue." *Id.* at 317. The rationale for this reasoning is:

> Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. A knowledge or ignorance of such facts would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the degree or character of the risk or in fixing the rate of premium.

*Inter-Ocean Ins. Co. v. Harkrader*, 193 Va. 96, 100-101. Materiality is a question of law. *Chitwood*, 206 Va. at 319. A misrepresentation is material if, "knowledge of a fact would cause the insurer to reject the risk, or to accept it only at a higher premium rate." *Id.* at 319. The misrepresentation need not be

intentional to bar recovery. "It is no longer necessary to show that a misrepresentation was willfully false, or fraudulently made, to affect its materiality. . . ." *Id.*

The evidence is clear that Dudley made misrepresentations in his application for insurance on 444. Nationwide showed through the uncontradicted testimony of Emmons that Dudley was asked whether he was the owner of the property, whether he had ever suffered foreclosure, and whether there were unpaid judgments against him. Dudley orally answered that he was the owner of the property, that he had never suffered a foreclosure, and that there were no unpaid judgments against him. Dudley went on to sign the application, indicating that the aforementioned answers were true.

Dudley does not dispute that the property had already been foreclosed upon and sold by the bank when he applied for insurance on the property. Nor does Dudley dispute the fact that there were unpaid judgments against him, as evidenced by the Chesapeake Circuit Court records. The existence of misrepresentations is clear.

In determining whether these misrepresentations are material, this Court considers whether knowledge of the foreclosure, the unpaid judgments against Dudley, and the fact that Dudley did not possess title nor deed to the property could have affected Nationwide's decision whether or not to issue an insurance policy to Dudley. In *Chitwood*, the Virginia Supreme Court stated:

> If the knowledge of a fact would cause the insurer to reject the risk, or to accept it only at a higher premium rate, that fact is material, though it may not even remotely contribute to the contingency upon which the insurer would become liable, or in any wise affect the risk.

*Chitwood*, 206 Va. at 319.

Nationwide, through the uncontradicted testimony of underwriter, Brenda Adams, established that it does not issue homeowner's policies to people who do not have deed to or title in the property to be insured. Moreover, Adams indicated Nationwide does not issue policies to people who have suffered foreclosure or who have unpaid judgments against them. Nationwide has the burden to prove that the misrepresentations would have materially influenced its decision to issue the policy. In *United States Fidelity and Guaranty Co. v. Haywood*, 211 Va. 394, 398, the Court found that the uncontradicted testimony of an agent met the materiality test because an agent would have the "authority to issue and did issue the binder in question and he was, therefore, a competent witness to testify that he would have rejected the risk had he known the true facts." Adams's testimony satisfies the materiality test because,

as the underwriter, she would be the one to make the decision whether or not to issue the policy.

Assuming, for the sake of argument only, that Dudley did not know of any judgments against him, the result of this case is unchanged. As stated in *Chitwood*, the fact that a misrepresentation was unintentional does not affect its materiality. 206 Va. at 319. Furthermore, the judgments against him were only one of three material misrepresentations Dudley made in his insurance application.

The Court concludes that Nationwide has proved that Dudley did make misrepresentations on the application for insurance for 444 and that such misrepresentations were material relative to the issuance of the policy. The uncontradicted testimony of an individual with the authority to issue the policy satisfies the materiality test. Misrepresentation or misrepresentations material to the decision to issue the policy would bar recovery on that policy. Accordingly, the Court rules that the policy which is the subject matter of the Amended Motion for Declaratory Judgment issued by Nationwide is and was void *ab initio*.

Dudley argues that the failure of Nationwide to produce the credit report which it obtained at the time of the application is significant. The credit report only pertains to unpaid judgments against Dudley and it is undisputed that Dudley misrepresented his circumstances on two other questions. Therefore, whether or not he misrepresented himself on a third question does not affect the fact that misrepresentations were made by Dudley on the application. Further, the credit report only goes to the question of whether or not Nationwide was on notice that Dudley had unpaid judgments against him. Dudley has not submitted any evidence to refute Nationwide's evidence that the credit report did not show the outstanding judgments. Therefore, Nationwide's uncontradicted testimony as to the contents of the credit report gives the Court no reason to suspect that Nationwide was on notice of the existence of judgments against Dudley.

Even, for the sake of argument only, if the policy were not void *ab initio*, the Court would conclude that at the time of the application for the policy on March 28, 1995, Dudley did not have an insurable interest in 444. It is not sufficient to suggest that another was holding the property under a "friendly arrangement" for and on behalf of Dudley. While Dudley would suggest that he has or did have on March 28, 1995, a "lawful and substantial economic interest" in 444, there is no credible evidence to indicate that there was any legal requirement for 444 to be conveyed or transferred to Dudley simply upon his request. Indeed, there could be any number of reasons or conditions that would preclude transfer of 444 to Dudley, including the sale of 444 by the

legal owner to another, incapacity, or death of the legal owner, or liens subsequent to March 28, 1995, which would affect the property. The *Castle Cars Co. v. United States Fire Ins. Co.*, 221 Va. 773 (1981), and *Blue Cross and Blue Shield v. McDevitt & Street Co.*, 234 Va. 191 (1987), cases are not applicable and are clearly distinguishable from the instant case. Further, as stated by the Virginia Supreme Court:

> "If . . . one insures a property of another, the contract of insurance is void and carries with it temptations to crime into which we should not be led. It is against public policy. In absence of an interest in the property to be insured, [an insurance] contract becomes in essence a wager which will not be sanctioned by the courts."

*Castle Cars*, 221 Va. 775 (citation omitted).

For the reasons aforesaid, the Court finds that the policy is void *ab initio* and that Nationwide owes no coverage, indemnification, defense, or any obligation to Dudley or any other person or entity under the policy, either now or at any time dating back to the inception of the policy.